[814 NYS2d 124]

In the Matter of NICHOLAS SCHREIBER, Respondent, v K-SEA TRANSPORTATION CORP. et al., Appellants.

First Department, April 25, 2006

## APPEARANCES OF COUNSEL

*Freehill, Hogan & Mahar*, New York City (*Thomas M. Canevari* and *Zachary M. Barth* of counsel), for appellants.

*Law Offices of Sanford F. Young, P.C.*, New York City (*Jan B. Rothman* and *Sanford F. Young* of counsel), and *Law Offices of Steven Thaler, P.C.*, New York City, for respondent.

## OPINION OF THE COURT

Tom, J.P.

This dispute concerns the validity of an agreement to arbitrate a claim arising out of injuries sustained by petitioner Nicholas Schreiber while serving as a seaman in the employ of respondents K-Sea Transportation Corp. and K-Sea Transportation LLC (collectively, K-Sea). At issue is whether the injured seaman has waived the right to "maintain an action for damages at law, with the right of trial by jury," as conferred by the Jones Act (46 USC Appendix § 688 [a]), and so can be compelled to proceed in arbitration pursuant to a postinjury agreement with his employer. This Court concludes the record is unclear and does not suffice to permit an assessment of the circumstances surrounding the injured seaman's waiver of the rights bestowed by the Jones Act. We are therefore unable, at this juncture, to determine whether petitioner intentionally relinquished a known right so as to warrant enforcement of the arbitration agreement.

The material facts are not in dispute. Petitioner was employed by respondents as an engineer on a tugboat en route from Tampa, Florida to New Orleans, Louisiana. On October 30, 2002, the deck plate on which petitioner was standing flipped up, causing him to fall through the deck, sustaining injury to his lower extremities. Upon arrival in New Orleans, he was treated at an emergency room and, upon his return home, by a physician in Florida. A November 2002 MRI report indicated a probable tear of the medial meniscus of the left knee as well as a lateral ankle ligament tear and peroneal tendinitis with bone bruising of the right ankle. Arthroscopic surgery on the left knee was recommended and was ultimately performed in January 2003.

Pursuant to a collective bargaining agreement with Local 333, United Marine Division union, respondents paid petitioner $15 a day in maintenance in addition to his medical expenses, an obligation that continues until petitioner returns to duty or attains his maximum medical cure. These benefits were explained to petitioner by K-Sea's claims manager, Alton Peralta. He further extended an offer to pay petitioner his "average two-thirds net weekly wage as an advance against settlement" if petitioner would agree to participate in the employer's "claims arbitration program" and pursue legal claims against K-Sea arising out of his injury in arbitration before the American Arbitration Association, rather than in court.

In December, Peralta sent petitioner the proposed agreement, which provides, inter alia, that as a condition for K-Sea to pay petitioner two thirds of his net weekly wages, petitioner agrees to submit all claims arising "under the doctrine of unseaworthiness, Jones Act or any other applicable law" to arbitration. The agreement further provides, in pertinent part:

> "Either party may call for arbitration by a notice to the other sent by registered mail. The arbitration shall be conducted by a panel of three arbitrators (or one arbitrator if the claim is for an amount less than $50,000) selected in accordance with the rules of the AAA . . . . Any filing fee, up to $750.00 and any deposit for compensation of the arbitrators shall be advanced by K-Sea, subject to subsequent allocation."

Upon petitioner's execution of the agreement, K-Sea began to pay him $925.51 every two weeks in addition to the $15 a day required under the collective bargaining agreement.

Following the January 2003 arthroscopic surgery, petitioner's condition deteriorated. Although he received extensive physical therapy, his knee worsened, requiring him to use a walker. In May, petitioner underwent arthroscopic surgery on his right ankle and was informed that he had sustained substantial nerve damage. Despite numerous injections to his left knee, petitioner was still unable to walk without pain and, in January 2004, underwent a second knee surgery that included grafting bone from his hip. The following month, while using his walker, petitioner's right ankle gave way, causing him to fall and fracture his left leg.

In March 2004, petitioner brought suit in Supreme Court against respondents, asserting a cause of action for violation of

the Jones Act against respondent K-Sea Transportation Corp. and claims for unseaworthiness and for maintenance and cure against both respondents. Respondents filed a demand for arbitration with the American Arbitration Association (AAA) on April 8, 2004, enclosing a $750 payment. On April 29, the AAA notified counsel for the respective parties that because the demand did not specify the amount of damages sought, "the minimum filing fee of $10,000 is required." The AAA gave the parties until May 6, 2004 to remit the fee, otherwise it "will not consider this matter filed."

By notice of petition affirmed on May 17, 2004, petitioner sought to stay arbitration. The petition recites that the demand was served on April 26, 2004, that petitioner's claimed damages exceed $1 million and that he does not possess the funds to pay the filing fee of $8,000 plus the case service fee of $3,250 required by AAA rules for a claim of this size. The affirmation states that petitioner did not consult with counsel prior to signing the arbitration agreement, that he was unaware of his rights under the Jones Act and that the substantial cost of proceeding in arbitration was never disclosed. A permanent stay was sought on the grounds that the agreement is unenforceable under the Jones Act and because it is unconscionable.

Supreme Court decided that the postinjury arbitration agreement, although valid and enforceable under the Federal Arbitration Act (FAA), constitutes a release of petitioner's right to a jury trial and imposes a financial burden upon him disproportionate to his ability to pay the cost of proceeding in the arbitral forum. The court permanently stayed arbitration, reasoning that because seamen are wards of the court, their rights should be carefully guarded and protected.

As an initial matter, respondents correctly point out that the arbitration agreement is not tantamount to a seaman's release. Thus, the court's imposition of a requirement to demonstrate that the agreement was fairly obtained rests on a faulty premise (*see Garrett v Moore-McCormack Co.*, 317 US 239, 246 [1942]). A release is an accord that removes a defendant from the litigation in exchange for the payment of a stipulated sum, leaving liability to be apportioned among any remaining defendants subject to the principle of joint and several liability (General Obligations Law § 15-108; *see Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases]*, 188 AD2d 214, 220-221 [1993], *affd* 82 NY2d 821 [1993] *for reasons stated below*). Here, no defendant was released from liability and no defendant's li-

ability was determined. Plainly, the arbitration agreement is not a release.

There is no record support for the conclusion that petitioner has assumed a financial burden disproportionate to his ability to pay. Moreover, because the record does not reflect that petitioner has actually been required to advance any part of the arbitration fees, it is merely speculative to conclude that he has assumed a financial obligation inconsistent with his present means. The assumption of a potential financial burden is not a valid ground to avoid the arbitration agreement. As stated by the United States Supreme Court,

> "The 'risk' that [a party] will be saddled with pro-hibitive costs is too speculative to justify the invalidation of an arbitration agreement.

> "To invalidate the agreement on that basis would undermine the 'liberal federal policy favoring arbitration agreements' " (*Green Tree Financial Corp.-Ala. v Randolph*, 531 US 79, 91 [2000], quoting *Moses H. Cone Memorial Hospital v Mercury Constr. Corp.*, 460 US 1, 24 [1983]).

On appeal, petitioner argues that his claims against K-Sea are exempt from the operation of the FAA (1) by its own terms and (2) by the terms of the Jones Act. He first contends that the FAA exempts from arbitration all matters involving "contracts of employment of seamen" (9 USC § 1).* He asserts that the arbitration agreement solicited by K-Sea "is an attempt to modify an employment contract, involves a claim arising out of employment, and therefore comes within the scope of the exemption set forth in Section 1." In sum, he reasons that because his injury arose out of his employment by K-Sea, the postinjury arbitration agreement constitutes a modification of his employment contract; and, because his contract of employment is excluded from the operation of the FAA, the statute precludes arbitration of his claim.

Petitioner fails to explain why an ad hoc, postinjury agreement to arbitrate a personal injury claim should be construed as a modification of the contract governing his employment (*cf. Brown v Nabors Offshore Corp.*, 339 F3d 391 [5th Cir 2003] [postemployment, preinjury modification of employment

---

* 9 USC § 1 provides, in pertinent part, that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

contract effected by vessel owner's implementation of dispute resolution program falls within exemption of 9 USC § 1]; *Buckley v Nabors Drilling USA, Inc.*, 190 F Supp 2d 958, 961 [2002], *affd* 51 Fed Appx 928 [5th Cir 2002] [same, rejecting attempt to limit FAA exemption "to seamen who are *actually* engaged in the movement of goods in interstate commerce"]). Petitioner's suit sounds in tort, not contract, and the dispute does not arise under the applicable collective bargaining agreement governing his employment.

While petitioner's premise that the FAA does not apply to employment contracts of workers engaged in interstate commerce is correct, his conclusion that arbitration is therefore precluded is unsound. Accepting his contention that federal arbitration law does not apply to this controversy results in the dispute being subjected to resolution under state arbitration law. New York State law, like the FAA, reflects a "strong public policy of encouraging, by judicial noninterference, an unfettered, voluntary arbitration system, where equity should be done" (*Matter of Neirs-Folkes, Inc. [Drake Ins. Co. of N.Y.]*, 75 AD2d 787, 788 [1980], *affd* 53 NY2d 1038 [1981]). Our courts will not intervene to stay arbitration unless the pertinent public policy considerations "prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631 [1979]). Thus, unless some federal policy precludes it, New York State law, like its federal counterpart, requires enforcement of the parties' arbitration agreement.

Indeed, petitioner's next argument is that, as a matter of policy, his Jones Act claim is not subject to arbitration. The substance of his contention is that the right conferred by the Jones Act to pursue a personal injury claim before a jury supports "the inapplicability of arbitration to Jones Act claims." He asserts, in summary fashion, that "in enacting the Jones Act, Congress singled out seamen for special protection by affording a right to a jury trial in personal injury and wrongful death cases." Furthermore, he notes, "the right to a jury trial is consistent with the exemption set forth [in] 9 USC § 1." Therefore, he concludes, "Jones Act claims are not subject to arbitration."

The Jones Act provides, in relevant part:

> "Any seaman who shall suffer personal injury in the course of his employment may, at his election,

maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply" (46 USC Appendix § 688 [a]).

Heightened protection to seamen is provided "because of their exposure to the 'perils of the sea' " (*see Chandris, Inc. v Latsis*, 515 US 347, 354 [1995]). Enacted in 1920, the Jones Act was intended to remove the bar against negligence actions imposed against seamen by the United States Supreme Court's opinion in *The Osceola* (189 US 158 [1903]) (*Chandris, Inc.,* 515 US at 354). The Jones Act added the remedy of a suit in negligence to the two previously existing remedies—an action to recover maintenance and cure from the employer and an action for damages sustained as the result of the unseaworthiness of the vessel (*id.*). Predating the FAA by five years, the Jones Act contains no expression of intent to limit the pursuit of its remedies to the judicial forum.

In the context of this litigation, brought under a federal statute extending a right of action to a seaman and implicating the right to proceed in an arbitral forum under the FAA, any policy to be promoted is purely federal. With the passage of the Jones Act, an injured seaman had the right to either proceed in admiralty or to bring an action in negligence, with the right to a jury trial expressly provided by the statute. The subsequent enactment of the FAA afforded the potential for arbitration of such statutory claims, subject to the limitation that the FAA would not "apply to contracts of employment of seamen" (9 USC § 1). The instant matter illustrates the obvious tension between the long-standing judicial tradition of affording seamen heightened protection, as wards of the admiralty, and the federal policy of promoting the arbitration of disputes.

While the FAA reflects a "federal policy favoring arbitration" (*Moses H. Cone Memorial Hospital v Mercury Constr. Corp.,* 460 US at 24), that policy is not absolute. As stated in *Shearson/ American Express Inc. v McMahon* (482 US 220, 226-227 [1987]):

"The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on

the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from [the statute's] text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." (Citations and internal quotation marks omitted.)

Federal courts have generally declined to enforce arbitration agreements in cases brought pursuant to the Jones Act on the ground that the relevant arbitration provision was contained in the governing contract of employment and, thus, subject to the exclusion of 9 USC § 1 (*see Brown v Nabors Offshore Corp.*, 339 F3d 391 [2003]; *Buckley v Nabors Drilling USA*, 190 F Supp 2d at 960).

Whether the exclusion of 9 USC § 1 extends to an ad hoc, postinjury agreement such as the arbitration provision at issue is far from clear, however. It is tempting to reason that if an arbitration provision incorporated into an employment contract is ineffective against a Jones Act claim then an ad hoc, postinjury agreement should be similarly ineffective. The contractual arbitration provision in an employment contract, after all, is the product of collective bargaining, adopted by agreement between union and management negotiators. The contribution of union representatives presumably ensures fairness to the employees who, individually, lack the knowledge and bargaining power to negotiate as equals. An injured employee from whom an arbitration agreement is individually extracted would therefore seem to be even more deserving of statutory protection. However, it is settled that the courts are required to accord a literal application to the FAA's exclusion for employment contracts of workers engaged in interstate commerce, without regard to policy considerations (*Circuit City Stores, Inc. v Adams*, 532 US 105, 119-120 [2001]; *see also Buckley v Nabors Drilling USA*, 190 F Supp 2d at 965 n 2).

This Court takes no position on the question of whether or not a waiver of judicial remedies is precluded by federal policy. For the purpose of this appeal, it is sufficient to state that petitioner has failed to sustain his burden "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue" (*Shearson/American Express Inc. v McMahon*, 482 US at 227). The FAA's exclusion for arbitra-

tion provisions inserted into contracts of employment does not, on its face, extend to the agreement at issue in this case. Moreover, no policy implications can be drawn from the statutory exception; rather, "it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable" (*Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.*, 473 US 614, 627 [1985]). In sum, petitioner has failed to identify any provision of the Jones Act, or any case construing the Jones Act, that supports the policy position he espouses.

Petitioner's final appellate contention is that the arbitration agreement should have been set aside because, as a ward of the admiralty, he is entitled to heightened protection from the courts (*see Robertson v Baldwin*, 165 US 275, 287 [1897]). He alleges that, at the time he signed the agreement, he was unaware of the extent of his disabilities, uncertain of his rights under the Jones Act, unrepresented by counsel and without the assistance of a union representative. In particular, petitioner maintains that he was uninformed concerning his right to a jury trial or its irrevocable waiver, irrespective of any future deterioration in his physical condition.

As previously noted, the Jones Act affords an injured seaman the right to bring an action for personal injury "at his election" (46 USC Appendix § 688 [a]). Thus, the statute clearly contemplates that the right to proceed before a jury is an option that can be alternatively exercised or waived. "A waiver is the voluntary abandonment or relinquishment of a known right. It is essentially a matter of intent which must be proved" (*Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y.*, 61 NY2d 442, 446 [1984]). "Negligence, oversight or thoughtlessness does not create it. . . . The evidence must have probative force sufficient to prove that there was in fact an intention to waive the right or benefit—a voluntary choice not to claim it" (*Alsens Am. Portland Cement Works v Degnon Contr. Co.*, 222 NY 34, 37 [1917]).

Petitioner, as a ward of the admiralty, is entitled to heightened protection from the courts. There is a long-standing policy to safeguard the rights of seamen, whose contracts are traditionally viewed with solicitude:

> " 'They are emphatically the wards of the admiralty; and though not technically incapable of entering

into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees. . . . If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable' " (*Garrett v Moore-McCormack Co.*, 317 US at 246, quoting *Harden v Gordon*, 11 Fed Cas No. 6047, at 485 [1823]).

The issue of whether petitioner freely and knowingly entered into the arbitration agreement and whether respondent scrupulously protected the rights of its employee was raised in the affidavit submitted in support of the petition. It states, "At the time Petitioner could not work, needed the money and was confronted with a take it or leave [it] situation." It continues, "He had no knowledge of legal matters such as arbitration procedures and the cost to arbitrate. He had no knowledge of the rights and remedies afforded by the Jones Act. At no time did K-Sea inform of his rights [*sic*] to consult with an attorney before signing the agreement."

State law cannot be used to obviate respondent's obligation to show that the arbitration agreement is equitable. As the Supreme Court observed in *Garrett v Moore-McCormack Co.* (317 US at 245), "in trying this case the state court was bound to proceed in such manner that all the substantial rights of the parties under controlling federal law would be protected."

When the particular right or benefit is claimed to have been waived by a seaman, heightened judicial scrutiny is warranted by the protection afforded to a ward of the admiralty, to whom the shipowner owes a fiduciary responsibility (*see Gibson v American Export Isbrandtsen Lines*, 125 AD2d 65, 69 [1987] [release]). In *Gibson*, this Court imposed a "heavy burden" on the owner to establish that there was a knowing and voluntary surrender of rights, in that case pursuant to a release that

"had been executed at a time when plaintiff was not represented by counsel and was procured by defendant's claims agent, who was also an attorney,

without disclosing to the seaman the contents of his medical reports as to the extent of his disability or fully apprising him of the legal rights which would be lost as a result of the settlement" (*id.*).

This Court is mindful that the right surrendered by petitioner herein is the right to proceed in a judicial forum, not the right to maintain any action whatsoever. The question remains, however, whether petitioner was sufficiently apprised of the consequences of his agreement to arbitrate that his decision to waive the right to jury trial can be deemed to be an informed one. It appears that the subject arbitration agreement was obtained by K-Sea's claims manager from petitioner at a time when petitioner was without assistance of counsel or representation by a union official and under circumstances suggesting that neither party was aware of the extent of the injuries that had been sustained. Whether sufficient disclosure was made to petitioner that the agreement may be said to have been freely and intelligently entered into by him is a question of fact that cannot be resolved on the present record (*id.* at 70-71). Particularly, the number and content of the discussions leading up to the arbitration agreement and the extent of the disclosure to petitioner cannot be discerned. Nor is it possible to assess the influence of such factors as petitioner's education and comprehension level, the effects of pain and prescribed medication or the financial pressures confronting him. Thus, a trial of such issues is necessary to decide if the contract entered into between the parties is equitable and should be enforced (CPLR 410, 7503 [a]).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Jane S. Solomon, J.), entered on or about August 23, 2004, which granted the petition and permanently stayed arbitration and denied respondents' cross motion to compel arbitration, should be reversed, on the law, without costs, to the extent of vacating the permanent stay and preliminarily enjoining arbitration of this dispute, and remanding the matter to Supreme Court for a hearing as to whether the subject arbitration agreement is enforceable. Motion seeking leave to enter stipulation of parties granted to the extent of accepting stipulation for filing and consolidating the actions for disposition.

ANDRIAS, J. (dissenting in part). Because the IAS court improperly placed the burden on petitioner's employer, K-Sea Transportation Corp. (K-Sea), of proving that there was no

deception or coercion on its part and that petitioner understood his obligations under the parties' postinjury claims arbitration agreement, dated January 3, 2003, I would reverse, deny the petition, and grant K-Sea's cross motion to compel arbitration with leave to petitioner to renew in the event his good-faith application to the American Arbitration Association (AAA) for a hardship waiver or reduction of the filing fee is denied. In such event, the denial of the petition and the granting of K-Sea's cross motion ought to be conditioned upon K-Sea advancing any filing fee in excess of $750 subject to subsequent allocation.

In this proceeding to permanently stay arbitration of a seaman's claim for damages for personal injury allegedly caused on October 30, 2002 by the unseaworthiness of the tugboat *Tasman Sea*, which was owned and operated by K-Sea, the parties' agreement to arbitrate petitioner's claim provided, inter alia, that "[a]ny filing fee up to $750.00 and any deposit for compensation of the arbitrators shall be advanced by K-Sea, subject to subsequent allocation."

The IAS court held that the parties' agreement is valid on its face and rejected petitioner's claim that it is unenforceable because the Federal Arbitration Act exempts agreements to arbitrate in "contracts of employment of seamen . . . engaged in foreign or interstate commerce." (9 USC § 1.) But, applying the heightened judicial scrutiny and protection afforded to seamen as wards of admiralty, the court held that because petitioner not only released his right to a jury trial, but accepted a financial burden disproportionate to his ability to pay, respondents have not met their burden of showing that there was no deception or coercion on their part and that petitioner understood his obligations under the agreement.

The majority opinion fairly states the facts and I am in agreement with its finding that the arbitration agreement in issue is valid. I further agree that petitioner has failed to sustain his burden of showing that Congress intended to preclude his waiver of his judicial remedies, including presumably the right to a jury trial, under the Jones Act, and that the Federal Arbitration Act's exclusion for arbitration provisions inserted into contracts of employment does not, on its face, extend to the agreement at issue in this case.

I also agree with the majority that the arbitration agreement is not tantamount to a seaman's release ("Here, no defendant was released from liability and no defendant's liability was determined. Plainly, the arbitration agreement is not a release")

and its conclusion that case law obligating a party who obtains a release from a seaman to demonstrate that it was fairly obtained is inapposite (*see Garrett v Moore-McCormack Co.*, 317 US 239, 246 [1942]).

Rather than embrace the conclusion compelled by its analysis to this point, however, the majority, almost as an afterthought, raises an issue not previously raised and finds that the question remains as to whether petitioner was sufficiently apprised of the consequences of his agreement to arbitrate so that his decision to waive the right to jury trial can be deemed to be an informed one. Although mindful that the right surrendered by petitioner is the right to proceed in a judicial forum, and not the right to seek any further recovery in arbitration, the majority subsequently analogizes to the sole case relied upon by the IAS court, *Gibson v American Export Isbrandtsen Lines* (125 AD2d 65, 69 [1987]), a case involving a seaman's release (which we all agree is not the case here), and concludes that a trial of the factual issue of whether there was sufficient disclosure to petitioner to permit a finding that he freely and intelligently entered into the arbitration agreement is necessary in order for the court to decide if the arbitration agreement entered into by the parties should be enforced.

Thus, although it disagrees with the IAS court's finding that the arbitration agreement was not tantamount to a seaman's release, the majority nevertheless is doing exactly the same thing that the IAS court did—improperly shifting the burden of proof from petitioner to K-Sea. That is clearly wrong and contrary to well-settled law that the party opposing arbitration bears the burden of proving that the claims at issue are not subject to arbitration (*see Green Tree Financial Corp.-Ala. v Randolph*, 531 US 79, 91-92 [2000]). Petitioner's status as a seaman is, in itself, insufficient to shift that burden and, other than generalizations about the heightened protection to be afforded to seamen as wards of admiralty, the majority cites no authority for such a holding.

Moreover, overlooked by the majority is the fact that, notwithstanding the conclusory language it quotes from the attorney's affirmation in support of the petition to the effect that petitioner had no knowledge of the rights and remedies afforded by the Jones Act and that K-Sea at no time informed him of his right to consult with an attorney before signing the agreement, the issue of an informed waiver of the Jones Act right to a jury trial was never raised by petitioner himself in his affidavit in support of the petition.

That six-page document, as well as counsel's reply affirmation, nowhere mentions that petitioner was unaware of his right to a jury trial under the Jones Act. His sole argument was that the arbitration agreement is unconscionable due to K-Sea's intentional withholding of information and its failure to disclose the cost of arbitration under the Commercial Rules of the American Arbitration Association ("If this information had been disclosed I would not have signed the 'Claims Arbitration Agreement' ").

Petitioner now raises the issue for the first time on appeal in the final point of his respondent's brief, in which he argues that K-Sea's claims manager "does not dispute that Petitioner was unaware of his right to a jury trial as provided by the Jones Act." What petitioner neglects is the fact, which is also not mentioned by the majority, that, in his letter dated December 16, 2002, K-Sea's claims manager specifically advised petitioner: "In exchange for the settlement advances, you agree to submit any claims you may have against K-Sea to binding arbitration. *The arbitration is a private process and the outcome will be decided by one or more arbitrators, not by a jury*" (emphasis added). Clearly, petitioner was advised that, by agreeing to arbitrate any claims, he was relinquishing his right to have such claims decided by a jury. Nor was there any showing by petitioner, who, as the party opposing arbitration, bears the ultimate burden of proving that the contract is unenforceable, of any deception or coercion on the part of K-Sea's claims manager. In fact, his letter advised petitioner in bold print:

> **"You are not obligated to sign the Agreement. You will continue to receive $15/day as maintenance, and medical cure at the Company's expense until you are fit for duty and/or reach maximum medical improvement, whether you sign the Agreement or not.** If you have any questions, or require further information, please feel free to call."

The enclosed "Claims Arbitration Agreement" also contains in bold print at the end the following statement:

> "Other than the promises contained in this agreement, I have been given no other promises to induce me to sign this Claims Arbitration Agreement. There has been no coercion used to make me sign this agreement. I have signed this agreement knowingly and willingly."

Accordingly, on a plain reading of the record before us, petitioner has failed to demonstrate that his agreement to arbitrate constituted an invalid waiver of his right to a trial by jury.

If that were the only issue presented, the agreement would be enforceable and the judgment appealed from should be reversed, the petition denied and K-Sea's cross motion to compel arbitration granted unconditionally. Petitioner is on firmer ground, however, when he argues that the arbitration agreement is unconscionable in that his inability to pay the required filing fee precludes him from pursuing his claim against K-Sea.

The Supreme Court has held that excessive fees associated with arbitration can invalidate an otherwise binding arbitration agreement; however, "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs" (*Green Tree Financial Corp.-Ala. v Randolph*, 531 US at 92). Thus, given the strong federal and state policy of encouraging arbitration agreements, it is incumbent upon petitioner, in attempting to avoid a clearly valid arbitration agreement, to demonstrate that the filing fee is so excessive and burdensome as to violate that public policy.

The majority cites *Green Tree* for its holding that the mere "risk" that a party may be saddled with prohibitive costs is too speculative to overcome "the 'liberal federal policy favoring arbitration agreements' " and is not a valid ground to avoid the arbitration agreement (*id.* at 91) and finds no record support for the conclusion that petitioner has assumed a financial burden disproportionate to his ability to pay.

In this case, however, unlike *Green Tree*, the "risk" of prohibitive costs is more than speculative. In its letter to the parties, dated April 29, 2004, acknowledging receipt of $750 as K-Sea's portion of the filing fee, the AAA advised the parties that under the Association's rules the minimum filing fee is $10,000 based upon the fact that petitioner seeks unspecified monetary damages. Moreover, petitioner's summary of his financial resources and obligations and his claim that he cannot afford that amount is not questioned by K-Sea.

In a case not cited by either party or the court below, the Fourth Department has held, as a matter of law, that the requirement of an excessive filing fee ($4,000 plus $200,000 based on a rate of .5% of the $40 million claim) to arbitrate the parties' dispute was unreasonable, unjust, unconscionable on its

face and unenforceable (*Matter of Teleserve Sys. [MCI Telecom. Corp.]*, 230 AD2d 585, 593 [1997]). Other courts have granted defendants' motions to compel arbitration on the condition that defendants pay most or all of the arbitration costs (*see Res v Masterworks Dev. Corp.*, 5 Misc 3d 1003[A], 2004 NY Slip Op 51169[U] [Sup Ct, NY County 2004] [at court's suggestion, after receiving plaintiff's extensive and convincing affidavit discussing the actual fees and expenses associated with arbitration and detailing her current financial status, defendants agreed to pay all but $5,000 of the arbitration costs and their motion to compel arbitration was granted on that condition]; *see also Phillips v Associates Home Equity Servs., Inc.*, 179 F Supp 2d 840 [2001] [where plaintiff had carried her burden of proving that she could not afford the more than $4,000 filing fee and other costs associated with arbitration before the AAA and was effectively precluded from proceeding, the court denied the defendant's motion to compel arbitration but said that it would be willing to entertain a motion to reconsider its ruling in the event defendant agreed to bear the costs associated with the arbitration]).

Petitioner also criticizes K-Sea for not advising him of the cost of arbitration before he signed the agreement. However, K-Sea cogently points out that, at the time of the agreement, it had no idea or indication as to the amount of any potential claim by petitioner. Unlike *Gibson v American Export Isbrandtsen Lines* (*supra*), a clearly inapposite case relied upon by the majority since it involved a seaman's release of any claim of liability, there is no evidence that K-Sea knew the alleged seriousness of petitioner's injury (petitioner himself states that he did not) and somehow took advantage of petitioner's naivete in legal matters. The record in fact is to the contrary since it appears that, prior to the events in question, petitioner was sophisticated enough to be a director of two Florida corporations, to retain counsel to defend him against a misdemeanor traffic charge in 1998, and to retain counsel to file for personal bankruptcy in 2001. Subsequent to the agreement, petitioner was also able to retain counsel to represent him in this proceeding and his companion personal injury action.

Ordinarily I would think the best solution would be to condition compelling arbitration upon respondents agreeing to advance the filing fee subject to subsequent allocation by the arbitrator. However, it is undisputed that the AAA's rules provide that the filing fee to be advanced by the party or parties

making a claim or counterclaim, subject to final apportionment by the arbitrator in the award, may, in the event of extreme hardship on the part of any party, be deferred or reduced. Therefore, I think the better course is to deny the petition and grant the cross motion to compel arbitration with leave to petitioner to renew in the event that his best efforts application for a reduction or waiver of the filing fee is denied by AAA. In such event, the denial of the petition and the granting of K-Sea's cross motion ought to be conditioned upon K-Sea advancing any filing fee in excess of $750 subject to subsequent allocation.

GONZALEZ and CATTERSON, JJ., concur with TOM, J.P.; ANDRIAS, J., dissents in part in a separate opinion.

Order and judgment (one paper), Supreme Court, New York County, entered on or about August 23, 2004, reversed, on the law, without costs, to the extent of vacating the permanent stay and preliminarily enjoining arbitration of this dispute, and remanding the matter to Supreme Court for a hearing as to whether the subject arbitration agreement is enforceable. Motion seeking leave to enter stipulation of parties granted to the extent of accepting stipulation for filing and consolidating the actions for disposition.