Petition for Writ of Mandamus Denied in Part and Granted in Part and
Opinion filed December 20, 2007








 

Petition
for Writ of Mandamus Denied in
Part and Granted in Part and Opinion filed December 20, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00501-CV

____________

 

IN RE WEEKS MARINE, INC., Relator

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

O P I N I O N

In this
original proceeding, relator Weeks Marine, Inc. (AWeeks Marine@) seeks a writ of mandamus directing
the respondent, Levi Benton, presiding judge of the 215th District Court of
Harris County, (1) to vacate (a) his October 31, 2006 order denying Weeks
Marine=s motion to compel arbitration and
(b) his May 3, 2007 order denying Weeks Marine=s motion for reconsideration of the
October 31 order, and (2) to stay court proceedings and compel the parties to
arbitration of their dispute(s).  We grant the petition in part and deny in
part.

Underlying Facts and Procedural History








Jose
Jimenez was injured in April, 2006, on a deck barge in a shipyard during the
course and scope of his employment with Weeks Marine.  Several days after the
injury, Jimenez executed a Claim Arbitration Agreement (Athe Agreement@) in which he agreed to arbitrate any
claims arising from his injury in exchange for Weeks Marine=s agreeing to advance certain sums to
Jimenez.  Under the Agreement, the advances were to be credited against any
recovery Jimenez may ultimately have against Weeks Marine, whether by
settlement or award, arising from the injury.  The Agreement called for the
advances to be paid from the date Jimenez was injured until the earlier of (1)
his being declared fit for duty; (2) his reaching maximum medical improvement;
or (3) six months of payments.

Two
months after the incident giving rise to his injury, Jimenez brought suit
against Weeks Marine under the Jones Act and general maritime law, asserting
that Weeks Marine=s negligence and the unseaworthiness of its vessel caused his
injury.  Jimenez refused Weeks Marine=s demand to submit the claims to
arbitration, although he continued to accept payment of advances under the
Agreement.  Weeks Marine paid the advances for six months, with a total of
$20,602.50 paid to Jimenez.

Weeks
Marine filed a motion to compel arbitration in the trial court, which denied the
motion after briefing and a hearing.  Approximately three months later, Weeks
Marine filed a motion for reconsideration of its motion to compel arbitration. 
Weeks Marine=s motion for reconsideration was based on a then-new decision of the
United States Court of Appeals for the Fifth Circuit, in which that court
affirmed an order requiring an injured employee to arbitrate claims under a
post-injury agreement similar to the Agreement at issue in this case.  After additional
briefing and another hearing, the trial court denied the motion for
reconsideration and refused to alter its order denying Weeks Marine=s motion to compel arbitration. 
Weeks Marine then filed this mandamus proceeding, seeking relief from the
orders denying its motion to compel arbitration and its motion for
reconsideration.

 

 








Standard of Review

Mandamus
is an extraordinary remedy that will issue only to correct a clear abuse of
discretion when the abuse cannot be remedied by appeal.  Walker v. Packer,
827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).  Whether Weeks Marine has
an adequate remedy by appeal depends on whether the Agreement is subject to, or
excepted from, the Federal Arbitration Act (AFAA@).[1] 
A party has no remedy by appeal in state court for the wrongful denial of its
right to arbitrate under an agreement subject to the FAA.  Jack B. Anglin
Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding); In
re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig.
proceeding).[2]  Jimenez
argues the Agreement in this case is excepted from the FAA.  If so, Weeks
Marine has a remedy by interlocutory appeal under the Texas General Arbitration
Act (ATAA@)[3]
and mandamus relief is not appropriate. 








If the
Agreement is not excepted from FAA coverage, so that mandamus relief is at
least theoretically available, Weeks Marine=s right to such relief depends on
whether the trial court abused its discretion by refusing to compel arbitration. 
On
mandamus review of factual issues, a trial court will be held to have abused
its discretion only if the party requesting mandamus relief establishes that
the trial court could have reached but one decision (and not the decision it
made).  Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 197 (Tex.
1985) (orig. proceeding); Walker, 827 S.W.2d at 839B40.  Mandamus review of issues of law is
less deferential.  A trial court abuses its discretion if it clearly fails to
analyze the law correctly  or apply the law to the facts.  In re Cerberus
Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).

                                                          Issues presented

Jimenez
contends that the Agreement is excluded from the FAA by virtue of Section 1 of
the statute.  Section 1 states, in pertinent part, Anothing herein contained shall apply
to contracts of employment of seamen.@  See 9 U.S.C.A. '1 (1999).  As explained below, we
conclude that (1) the Agreement is not a contract of employment of a seaman,
(2) the Agreement is subject to the FAA, and therefore (3) mandamus is a proper
procedure by which Weeks Marine may obtain relief from the trial court=s refusal to compel arbitration of
Jimenez=s claims.

Having
thus determined that Weeks Marine is properly before this court by original
proceeding for writ of mandamus, we next address whether the trial court abused
its discretion in denying the motion to compel arbitration.  In the trial
court, in opposition to Weeks Marine=s motion to compel arbitration,
Jimenez contended that the Agreement is not enforceable under the FAA because:

$                  
post-injury
agreements between a seaman and his employer are invalid under Section 5 of the
Federal Employers= Liability Act; 

$                  
the Agreement
does not meet the stringent standards applied by the United States Supreme
Court to agreements that diminish a seaman=s substantive rights; and

$                  
under Texas law,
the Agreement is procedurally and substantively unconscionable.








The
trial court addressed only the first of these contentions in its order denying
arbitration, but the order provides that arbitration is denied A[f]or reasons not expressly limited
hereto.@  An order denying arbitration must
be upheld if it is proper on any basis considered by the trial court. In re
H.E. Butt Grocery Company, 17 S.W.3d 360, 367 (Tex. App.CHouston [14th Dist.] 2000, orig.
proceeding); In re R&R Personnel Specialists of Tyler, Inc., 146
S.W.3d 699, 703 (Tex. App.CTyler 2004, orig. proceeding).  Accordingly, we review all
arguments presented.

Analysis

A.        Is the Agreement a contract of employment of
a seaman and, therefore, unenforceable under the FAA?[4]


As a
preliminary matter, Weeks Marine asserts that the trial court improperly placed
the burden on Weeks Marine to prove that the Agreement was not subject to
exclusion under the FAA.  The order denying arbitration states: 

Weeks
offers no evidence to establish what is within and without Aplaintiff=s
employment contract.@  While this Court does not find the [Agreement] Weeks
seeks to enforce here to be within any such contract, it was Weeks [sic] burden
to establish that it was not.  They failed to do so.

 

Weeks Marine disputes the
trial court=s allocation of the burden of proof and contends that a party seeking to
avoid arbitration under the FAA bears the burden of establishing applicability
of the Section 1 exclusion, because federal law favors arbitration.[5] 
According to Weeks Marine, in this case, Jimenez properly bears the burden of
establishing that the Agreement is a contract of employment. 








Whether
the burden was on Weeks Marine to prove the Agreement is not a contract of
employment or on Jimenez to prove that it is (and we do not decide this issue),
the Agreement, as a matter of law and on its face, is not a contract of
employment.  In describing the purpose of the Agreement, the parties refer to
employment only in the past tense: AI was employed by You@; AYou were the owner and/or
operator of the vessel and/or I was your employee.@  The Agreement does not address or
define any terms of employment, nor does it establish or modify an employment
relationship.

Jimenez
insists the Agreement constitutes at least a modification of his employment
contract.  The amount of advances due under the Agreement is Afifty percent (50%) of the gross
wages (regular and overtime) I would have otherwise earned based upon my
earnings history immediately prior to my accident of April 29, 2006.@  Jimenez contends Weeks Marine
effectually continued to pay him under his employment contract by tying the
amount of advances under the Agreement to his wages.  Jimenez further argues
the Agreement is Aemployment related@ because Weeks Marine stated in the
cover letter transmitting the Agreement to Jimenez that advances would be Ain addition to the obligatory $20
daily maintenance@; Aretroactive to the date of your last work day@; and Aagainst ... claims for wages or other
compensation due.@ 








To
determine whether the Agreement is a Acontract of employment,@ Jimenez asks us to focus solely on
the presence of employment-related words in the Agreement and in a transmittal
letter B Awork day,@ Awages,@ Amaintenance and cure@ B instead of on the purpose and
meaning of the Agreement itself.  Jimenez offers, and we find, no support in
the law for such an approach, and we decline to adopt it. Read in its entirety,
with effect given to the meaning of all provisions, we conclude the parties
intended the Agreement to be an agreement to arbitrate claims in exchange for
voluntary payment of a portion of the potential value of those claims.  The
advances contemplated by the Agreement (and actually received by Jimenez) do
not constitute wages, because, as Jimenez concedes, he performed no work for
Weeks Marine after his injury.  The Agreement is not somehow transformed into a
contract of employment merely because it provides for advances to be calculated
from Jimenez=s historical wages or credited against any eventual recovery for lost
wages under the Jones Act.  Likewise, the Agreement is not transformed into a
contract of employment by virtue of Weeks Marine=s choosing to assure Jimenez, in a
letter, that any advances under the Agreement would be in addition to the
maintenance and cure to which he was already fully entitled.[6]

As a
matter of law, the Agreement is not a contract of employment and thus not
excluded from the FAA.[7]  We now
consider whether the trial court=s refusal to compel arbitration
constitutes an abuse of discretion.

B.        Did the trial court abuse its discretion by
refusing to compel arbitration of Jimenez=s claims against Weeks Marine?








A party
seeking to compel arbitration must first establish the existence of a valid
arbitration agreement and that the claims asserted are within the scope of the
agreement.  FirstMerit Bank, 52 S.W.3d at 753; see also  In re
D. Wilson Construction Co., 196 S.W.3d 774, 781 (Tex. 2006) (orig.
proceeding).  If the movant proves these two elements, the burden shifts to the
party opposing arbitration to present a valid defense to the agreement.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 227B28 (Tex. 2003).  If the responding party does not
present a valid defense, the trial court has no discretion and must compel
arbitration and stay its own proceedings.  In re Autotainment Partners
Limited Partnership, 183 S.W.3d 532, 534B35 (Tex. App.CHouston [14th Dist.] 2006, orig.
proceeding) (citing In re J.D. Edwards World Solutions Co., 87 S.W.3d
546, 549 (Tex. 2002) (orig. proceeding)). 

Jimenez
does not dispute that he signed the Agreement and that, if enforceable, it
covers the claims he asserts in the underlying lawsuit.  In opposition to Weeks
Marine=s motion to compel arbitration,
however, Jimenez asserts a number of defenses to enforceability.  We will
address each of his defenses in turn. 

1.         Is the Agreement invalid under Section 5 of
the Federal Employers=
Liability Act?

Jimenez
cites two United States Supreme Court cases for the proposition that Apost-injury agreements have been
determined to be invalid under Section 5 of the Federal Employers= Liability Act [AFELA@].@  See Boyd v. Grand Trunk Western
Railroad Co., 338 U.S. 263 (1949); Duncan v. Thompson, 315 U.S. 1
(1942).  FELA Section 5 invalidates any contract that enables a common carrier
to exempt itself from Aany liability created by this [FELA] chapter.@  45 U.S.C.A. '55 (1986).  

In Duncan,
an employer paid $600 to an injured employee in exchange for the employee=s agreement to try to resolve any
attendant disputes without litigation and to return the money before he filed a
lawsuit.  The Court held that the agreement was invalid under FELA Section 5
because requiring the destitute employee to return the $600 before filing suit
had the effect of exempting the employer from liability.  315 U.S. at 7.








The
later case of Boyd involved a post-injury agreement under which the
employee received cash advances against future recovery in exchange for his agreeing
to bring any suit against the employer only in certain named venues in
Michigan.  The employee eventually filed suit in Illinois state court.  The
employer filed suit against the employee in Michigan, seeking to enforce the
agreement and to enjoin prosecution of the Illinois action.  Concluding the
agreement purported to exempt the employer from (the liability of) suit in
FELA-designated venues, the Court held on certiorari that Section 5 precluded
enforcement of the agreement against the employee.  338 U.S. at 265B66.

Jimenez
argues that the reasoning of Boyd and Duncan is applicable to
preclude enforcement of the Agreement because the Jones Act extends FELA rights
to seamen.[8]  The trial
court agreed, stating in its order denying arbitration, AEven if Weeks did establish that [the
Agreement] was outside of any employment contract [and thus subject to the
FAA], this Court would still deny the motion based on the reasoning set out in
the cases relied on by plaintiff, [Boyd and Duncan].@  Several weeks later, Weeks Marine
asked the trial court to reconsider its order on the basis of the just-issued Terrebonne
decision, in which the Fifth Circuit held that FELA Section 5 does not
invalidate a seaman=s agreement to arbitrate personal injury claims.  Terrebonne
v. K-Sea Transportation Corp., 477 F.3d 271 (5th Cir. 2007).  Terrebonne
did not persuade the trial court to alter its order and to compel arbitration,
but we are persuaded that it was an abuse of discretion for the trial court to
deny arbitration based on Boyd and Duncan.








The
Fifth Circuit read Boyd to hold that the venue provisions of FELA are
protected under FELA Section 5 because such venue is a Aliability created by this [FELA]
chapter.@  The court concluded that neither Boyd
nor FELA Section 5 precluded enforcement of the agreement in Terrebonne
because the agreement required the employee to give up nothing that had been Acreated by [FELA].@  Terrebonne, 477 F.3d at 280B83 (following earlier decision in Pure
Oil Co. v. Suarez, 346 F.2d 890 (5th Cir. 1965) (holding that FELA venue
provisions do not apply in Jones Act cases), aff=d other grounds, 384 U.S. 202 (1966)).  See also
Terrebonne at 284 (AUnder the arbitration agreement, Terrebonne does not forgo
the substantive rights afforded by the Jones Act (and the general maritime
law), he only submits to their resolution in an arbitral, rather than a
judicial, forum.@) (internal quotation marks omitted); Great Lakes Dredge
& Dock Company, LLC v. Larrisquitu, Slip Copy, 2007 WL 2330187
(S.D.Tex. Aug. 15, 2007) (holding that Boyd does not preclude
enforcement of forum selection clause in Jones Act case). 

In
addition, the court distinguished Boyd because it did not involve a
federal statute that authorized and provided for enforcement of the agreement
at issue.  The agreement in Terrebonne was governed by the FAA and Athus the issues >must be addressed with a healthy regard
for the federal policy favoring arbitration.=@  Terrebonne, 477 F.3d at 283
(quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991))
(footnote omitted). 

We
conclude the Agreement requires Jimenez to give up nothing that was Acreated by [FELA].@  FELA Section 5, therefore, does not
apply to invalidate the Agreement even under the reasoning of Boyd and Duncan
We further question the applicability of such reasoning to this case, in which
the issues must be considered with a healthy regard for the federal policy
favoring arbitration Accordingly, we hold the trial court misapplied FELA
Section 5, Boyd, and Duncan to deny Weeks Marine=s motions to compel arbitration and
for reconsideration, thereby abusing its discretion. 

2.         Is the Agreement invalid because it
improperly diminishes a seaman=s substantive rights?








Jimenez
contended below, and argues here, that the Agreement is not enforceable because
it does not meet Athe stringent standard applied to seaman=s agreements that diminish the seaman=s substantive rights.@[9]  For this proposition, Jimenez cites
Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 246B47 (1942).  Garrett involved a
release of liability executed by an injured seaman in favor of his employer. 
The Supreme Court addressed whether, in the seaman=s subsequent state court lawsuit
under the Jones Act and general maritime law, the burden was on the seaman to
invalidate the release (pursuant to the state=s procedural rule regarding releases)
or on the employer to sustain the release (pursuant to the general admiralty
rule).  Id. at 242B43.  Rejecting application of the state rule, the court
discussed the historic national policy in favor of safeguarding seamen=s rights.  In that discussion, the
court stated: A[O]n every occasion the court expects to be satisfied, that the
compensation for every material alteration is entirely adequate to the
diminution of right or privilege on the part of the seaman.@  317 U.S. at 246B47 (citation omitted).  

Weeks
Marine claims that Garrett is applicable only to release agreements, but
the court=s reasoning is not so limited and in fact appears applicable to all
agreements between seamen and employers.  Nonetheless, there are two factors
that weigh against subjecting the Agreement in this case (or any seaman=s arbitration agreement) to the
scrutiny espoused in Garrett.  First, there is a strong federal policy
in favor of arbitration agreements, even in the maritime context (except in the
employment contracts of seamen),[10] whereas
there was no such policy favoring release agreements under consideration in Garrett. 
On that basis, the reasoning used is not fully applicable to the context at
hand.  Second, subjecting seamen=s arbitration agreements to Garrett
scrutiny runs afoul of the rule that FAA-governed arbitration agreements may be
invalidated only on grounds that apply to any contract.[11]   









Finally,
even if we accept Jimenez=s contention that Weeks Marine must prove, under Garrett,
that the Agreement is fair to Jimenez, the details of the exchange are in the
record.  Jimenez is incorrect in his conclusion that the exchange was Agrossly unbalanced.@  Jimenez claims that A[a]n advance on money owed is by no
means adequate consideration in exchange for giving up [the right to a jury
trial and appellate review], much less the >extraordinary benefits= owed for those sacrifices under Garrett.@  However, until the claims are
adjudicated in Jimenez=s favor, the money is not Aowed.@  Considering the strong federal
policy favoring arbitration, the Agreement would not fall shy of the Astringent standard@ espoused in Garrett, were
such standard applicable.

The
order denying arbitration cannot be sustained on the basis that the Agreement
fails to withstand Garrett scrutiny, because (1) Garrett does not
apply and (2) if Garrett did apply, the record does not support a
conclusion that Jimenez received inadequate consideration for entering into the
Agreement.  

3.         Is the Agreement substantively
unconscionable under Texas law and thus unenforceable against Jimenez?

Jimenez
argues that denial of Weeks Marine=s motion to compel arbitration was
proper under the FAA because the Agreement is unconscionable under Texas law. 
There are two types of unconscionability: procedural (fairness of the
circumstances surrounding adoption of the arbitration provision) and
substantive (fairness of the arbitration provision itself).  See, e.g., In
re Luna, 175 S.W.3d 315, 319 (Tex. App.CHouston [1st Dist.] 2004, orig.
proceeding).  Both procedural and substantive unconscionability may be
considered by a court in determining whether an arbitration clause is valid and
enforceable.  In re Halliburton Co., 80 S.W.3d 566, 572 (Tex. 2002)
(orig. proceeding) (Acourts may consider both procedural and substantive
unconscionability of an arbitration clause in evaluating the validity of an
arbitration provision@).








The test
for substantive unconscionability is whether, Agiven the parties= general commercial background and
the commercial needs of the particular trade or case, the clause involved is so
one-sided that it is unconscionable under the circumstances existing when the
parties made the contract.@  In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757
(Tex. 2001) (orig. proceeding) (quoted in In re Palm Harbor Homes, Inc.,
195 S.W.3d 672, 678 (Tex. 2006) (orig. proceeding)).  To show substantive
unconscionability in the trial court , Jimenez presented his and his wife=s affidavits stating, respectively, AI do not have the financial ability
to pay for an arbitration,@ and AWe do not have the financial ability to pay for an
arbitration.@  Jimenez presented no evidence below of the potential cost of an
arbitration under the terms of the Agreement.  In this court, Jimenez cites a
report on the internet as evidence that the average cost of an AAA arbitration
in 2002 can be as much as $6,650 for a small consumer claim.  Jimenez contends
in his briefing, AFor a larger personal injury claim, such as this one, the
costs could be significantly higher.@

Assuming,
without deciding, that this evidence is competent to show the likely cost of
arbitration for this dispute, Jimenez must still show the likelihood of
incurring such costs.  Green Tree Financial Corp.-Ala. v. Randolph, 531
U.S. 79, 92 (2000) (Awhere, as here, a party seeks to invalidate an arbitration
agreement on the ground that arbitration would be prohibitively expensive, that
party bears the burden of showing the likelihood of incurring such costs@); see also FirstMerit,
52 S.W.3d at 756B57.  Under the Agreement, Weeks Marine is required to pay the
filing fee and any deposit for compensation of the arbitrator(s), with subsequent
allocation of fees between the parties.  An agreement that is silent as to cost
is not per se unconscionable, FirstMerit, 52 S.W.3d at 756B57, and an agreement that provides
for fee-splitting is not, by itself, unconscionable.  Pony Express Courier
Corp. v. Morris, 921 S.W.2d 817, 822 (Tex. App.CSan Antonio 1996, no pet.).   It
follows that an agreement providing for Asubsequent allocation@ of cost is not necessarily
unconscionable.  Moreover, Weeks Marine averred in the trial court, and avers
here, that it will bear the entire cost of the arbitration. 








For the
reasons stated above, we hold the order denying arbitration cannot be sustained
on the basis that the Agreement is substantively unconscionable.

4.         Is the Agreement procedurally
unconscionable under Texas law and thus unenforceable against Jimenez?

One of
Jimenez=s defensive contentions is that the
Agreement is procedurally unconscionable because Ait was procured under improper
circumstances and by strong-arm means.@  Specifically, Jimenez asserts that
(1) he did not understand the Agreement, (2) he would not have signed if he had
been told that he was giving up his right to a jury trial, (3) Weeks Marine=s representative told him he would
receive no benefits unless he signed the document (which he says she described
as Apaperwork@), and (4) Weeks Marine pushed the
Agreement on Jimenez when he was still recuperating and under stress from his
injury. Weeks Marine disputes these assertions but further argues that a claim
of procedural unconscionability will not preclude arbitration, because
procedural unconscionability is properly a question for the arbitrator, not the
court.  In this regard, Weeks Marine relies on Prima Paint Corp. v. Flood
& Conklin Mfg. Co., 388 U.S. 395 (1967) and Buckeye Check Cashing,
Inc. v. Cardegna, 546 U.S. 440 (2006).








In Prima
Paint, a party resisted arbitration on the basis that it had been
fraudulently induced to sign the contract containing the arbitration
provision.  Settling a conflict among the circuit courts of appeal, the United
States Supreme Court held that in addressing a motion to compel arbitration and
any opposition thereto, Aa federal court may consider only issues relating to the
making and performance of the agreement to arbitrate.@  388 U.S. at 404.[12] 
In the more recent case, Buckeye Check Cashing, the Court declared that
this rule also applies to FAA cases pending in state courts, as a matter of
substantive federal arbitration law.  546 U.S. at 449.  See also FirstMerit,
52 S.W.3d at 756 (Adefenses must specifically relate to the Arbitration Addendum
itself, not the contract as a whole, if they are to defeat arbitration@).

The
parties take opposing positions on whether Jimenez=s procedural unconscionability claim
relates to the Acontract as a whole@ or to the Aarbitration provision.@  Weeks Marine suggests that the
Agreement is a Alarger@ contract, calling for the payment of advances to Jimenez,
into which was inserted an arbitration clause.  This characterization is belied
first by the title of the Agreement, which is AClaim Arbitration Agreement.@  Plus, Weeks Marine ignores that its
offer to pay advances on Jimenez=s claims constitutes the
consideration for Jimenez=s agreeing to arbitrate those claims, which is the primary,
if not exclusive, reason for the Agreement.  Cf. In re H.E. Butt Grocery
Company, 17 S.W.3d 360, 368 (Tex. App.CHouston [14th Dist.] 2000, orig.
proceeding) (determining that where sole purpose of document was to give
employee the option of electing comprehensive benefits and arbitration over
basic benefits and the right to sue, defense to arbitration was properly
construed as attack on arbitration provision). We conclude that Jimenez=s procedural unconscionability attack
is directed at the agreement to arbitrate.[13]  
Under Prima Paint and its progeny, such an attack presents a question
for disposition by the trial court, rather than the arbitrator.








Our
holding that the procedural unconscionability issue in this case is for the
trial court to decide does not rest exclusively on our conclusion that the
issue is directed at the agreement to arbitrate rather than at the Alarger@ agreement.  In the cases
establishing and following the Arule@ that defenses aimed at the contract as a whole are to be
determined by the arbitrator, not the court, the contract at issue contained a
broad arbitration provision.  In Prima Paint, for example, the provision
at issue called for arbitration of A[a]ny controversy or claim arising
out of or relating to this Agreement, or the breach thereof.@  388 U.S. at 398 (emphasis added).[14] 
Indeed, in establishing its seminal holding, the Court in Prima Paint
stated, AIn the present case no claim has been
advanced by Prima Paint that F & C fraudulently induced it to enter into
the agreement to arbitrate >(a)ny controversy or claim arising out of or relating
to this Agreement, or the breach thereof.=  This contractual language is
easily broad enough to encompass Prima Paint=s claim that [the agreement] itself
[was] procured by fraud.@  388 U.S. at 406 (emphasis added). 
The scope of the arbitration provision encompassed the defenses raised to the
agreement as a whole, so those defenses were held subject to arbitration.   See
also Buckeye Check Cashing, 546 U.S. at 446 (Abecause respondents challenge the
Agreement, but not specifically its arbitration provisions, those provisions
are enforceable@) (emphasis added).

In this
case, the arbitration clause provides:

[Weeks
Marine is] prepared to make voluntary advances against settlement of any claim
that could arise out of the personal injury/illness claim I have made
including, but not limited to, claims for wages or other compensation due;
claims for breach of any contract or covenant; tort claims; Jones Act claims,
general maritime claims, claims for discrimination or harassment on bases which
include but are not limited to race, sex, sexual orientation, religion,
national original, age, marital status, disability or mental condition; claims
for benefits and claims for violation of any federal, states [sic] or other
governmental statute, ordinance, regulations or public policy, under the
doctrine of unseaworthiness, Jones Act, or any other applicable law, provided
[that Jimenez] agree[s] to arbitrate any such claim ... .

 








Jimenez did not, by this
provision, agree to arbitrate any claims that may arise as a result of entering
into the Agreement; he agreed only to arbitrate claims arising out of the
injury he suffered during his employment with Weeks Marine.  Jimenez=s defensive claim B that he was induced to sign the
Agreement by unconscionable means on the part of Weeks Marine B thus does not fall within the scope
of the arbitration agreement between the parties. Consequently, under Prima
Paint and its progeny, even if the procedural unconscionability claim were
directed at the contract as a whole (as Weeks Marine argues), the issue is not
one for the arbitrator because the arbitration provision does not cover that
issue.  Cf. Howsam v. Dan Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)
(because arbitration is a matter of contract, party cannot be required to
submit to arbitration any dispute which he has not agreed so to submit); 9
U.S.C.A. '4 (1999) (where Athe making of the agreement for arbitration ... is not in
issue, the court shall make an order directing the parties to proceed to
arbitration in accordance with the terms of the agreement@) (emphasis added).  








Finally,
Jimenez suggests that in denying arbitration and reconsideration, the trial
court implicitly found that Weeks Marine used improper means to procure the
Agreement, which was thus procedurally unconscionable.  Any such finding would
necessarily have been based on the court=s accepting the Jimenezes= affidavit testimony and disregarding
the affidavit testimony of Teresa Olivo, Weeks Marine=s representative.[15] 
When faced with conflicting affidavits, however, a trial court may not
adjudicate defenses to enforceability of an arbitration agreement without an
evidentiary hearing.  Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266,
269 (Tex. 1992) (orig. proceeding) (Aif the material facts necessary to
determine [a motion to compel arbitration] are controverted, by an opposing
affidavit or otherwise admissible evidence, the trial court must conduct an
evidentiary hearing to determine the disputed material facts@).[16] 
The parties confirmed at oral argument that the trial court did not conduct an
evidentiary hearing on Weeks Marine=s motion to compel arbitration or its
motion for reconsideration.   

The
order denying arbitration cannot be sustained on the basis that the Agreement
is procedurally unconscionable, although that issue is properly to be resolved
by the court.  If, as Jimenez contends, the trial court implicitly found that
the Agreement is procedurally unconscionable, it was an abuse of discretion for
such finding to be made without an evidentiary hearing.                                                 

Conclusion

The
order denying arbitration cannot be sustained on any ground considered by the
trial court.  Accordingly, we conditionally grant Weeks Marine=s petition insofar as it requests us
to instruct the trial court to vacate the order.  We are confident
the trial court will vacate its October 31, 2006 order denying Weeks Marine=s motion to compel
arbitration and its May 3, 2007 order denying Weeks Marine=s motion for
reconsideration.  The writ of mandamus will issue only if the trial court fails to comply. 








The
procedural unconscionability issue is not, as Weeks Marine contends, for the
arbitrator to decide.   The issue is for the trial court to decide,[17]
but the trial court has either not made a decision or made a decision on
disputed affidavit testimony without the requisite evidentiary hearing.  In
either event, we are unable to direct entry of an order compelling arbitration
while disputed issues of fact remain unresolved.  Accordingly, we deny the
petition insofar as Weeks Marine requests us to instruct the trial court to
compel arbitration. 

 

 

/s/        Charles W. Seymore

Justice

 

Petition Granted in Part and Denied in Part and
Opinion filed December 20, 2007.

Panel consists of Justices Yates, Frost, and Seymore.









[1]  9 U.S.C. '1 et
seq.





[2]  But see In re D. Wilson Constr. Co., 196
S.W.3d 774 (Tex. 2006).  In In re D. Wilson, the Texas Supreme Court
concluded the court of appeals had wrongly dismissed, for want of jurisdiction,
a party=s TAA-based interlocutory appeal from the trial court=s denial of the party=s arbitration rights under an FAA-governed agreement.  Id. at
778B80.  Given this conclusion, one might postulate that
such party is not entitled to mandamus relief because the interlocutory appeal
is an adequate remedy.  However, in In re D. Wilson itself, the Texas
Supreme Court granted mandamus relief to the party whose rights had been
wrongfully denied under the FAA-governed arbitration agreement.  Id.at
780B81.  Because the Court granted mandamus relief in that
case and has not overruled Jack B. Anglin, we conclude mandamus review
remains available for wrongful denial of arbitration rights under an agreement
subject to the FAA. 





[3]  Tex. Civ. Prac. & Rem. Code '171.098(a)(1). 





[4]  Weeks Marine does not dispute that Jimenez is a
seaman for purposes of FAA Section 1.  Thus, our analysis concerns only whether
the Agreement constitutes a contract of employment.





[5]  In this regard, Weeks Marine cites Green Tree
Financial Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000) (party seeking to
avoid arbitration bears burden of showing that prohibitive cost of arbitration
renders agreement substantively unconscionable); Gilmer v.
Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (party seeking to
avoid arbitration agreement bears burden of proving that Congress intended to
preclude waiver of judicial forum for the particular statutory claims at
issue); Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 297
(5th Cir. 2004) (Aparty seeking to invalidate an arbitration agreement
bears the burden of establishing its invalidity@); and FirstMerit Bank, 52 S.W.3d at 756 (same).





[6]  Further, even if the Agreement can be characterized
as Aemployment related,@ as
Jimenez argues, only Acontracts of employment of seamen@ are excluded from the FAA.  9 U.S.C.A. '1 (1999) (emphasis added).  See Terrebonne v. K-Sea
Transportation Corp., 477 F.3d 271 (5th Cir. 2007).  In Terrebonne,
the Fifth Circuit was asked to hold that a post-injury arbitration agreement
was a contract of employment because part of the consideration for the employee=s promise to arbitrate was the employer=s payment of past-due maintenance and cure.  The
employee argued that because the maintenance and cure obligation is inseparable
from a seaman=s employment contract, the post-injury arbitration
agreement at issue was therefore subsumed into his employment contract and
excluded from enforcement under the FAA.  Conceding that the maintenance and
cure obligation is an intrinsic part of the employment relationship
between seaman and employer but noting that the agreement did not purport to
change that obligation or any aspect of the worker=s actual employment, the Fifth Circuit held Athe agreement is not subsumed into [the employee]=s employment contract, and does not fall under section
one=s exception to the FAA=s coverage.@  477 F.3d at 280 (footnote omitted). 





[7]  In opposition to Weeks Marine=s motion to compel arbitration and pending petition
for writ of mandamus, Jimenez cites Brown v. Nabors Offshore Corp., 339
F.3d 391 (5th Cir. 2003) and Buckley v. Nabors Drilling USA, Inc., 190
F.Supp.2d 958 (S.D. Tex. 2002).  These decisions do not inform our inquiry
whether the Agreement is contained or subsumed in a contract of employment.  In
Brown, the employer conceded the arbitration agreement was contained in
the seaman=s employment contract.  The issue presented was
whether the employee/seaman must prove that he was actually Ainvolved in the transportation of goods in commerce@ for the FAA '1
exclusion to apply.  See 9 U.S.C. '1
(exempting from the FAA Acontracts of employment of seamen, railroad employees,
or any other class of workers engaged in foreign or interstate commerce@).  The Fifth Circuit, upholding the trial court=s denial of the employer=s motion to compel arbitration, found that Congress intended to exclude
seamen=s contracts of employment from the arbitration act
even where a particular seaman was not actually Aengaged in ... commerce.@  Brown,
339 F.3d at 394 (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105
(2001)).  Buckley is similarly distinguishable and unhelpful here.  Buckley,
190 F.Supp.2d at 961B62 (concluding arbitration agreement contained in
contract that employer conceded was Aof
employment of a seaman@ was excluded from FAA coverage without
employee/seaman=s having to demonstrate actual involvement in
interstate commerce).





[8]  Cox v. Roth, 348 U.S. 207, 208 (1955) (ACongress, in passing the Jones Act, did not
specifically enumerate the rights of seamen, but merely extended to them the
same rights granted to railway employees by [FELA]@); 46 U.S.C.A. [Revised] '30104(a) (Supp. 2007).





[9]  But see Terrebonne, 477 F.3d at 284 (holding
that by agreeing to submit Jones Act claim to arbitral rather than judicial
forum, seaman does not forgo substantive rights); Larrisquitu,
2007 WL 2330187, at *20 (ATerrebonne
demonstrates that the protected status of domestic seamen does not exempt
seamen from being bound by contracts that limit the tribunals for resolving
claims, including claims under the Jones Act.@).





[10] Terrebonne, 477 F.3d at 285.





[11] 9 U.S.C.A. '2
(1999) (providing that written arbitration provision in maritime or other
transaction involving commerce Ashall be valid,
irrevocable, and enforceable, save upon any such grounds as exist at law or in
equity for the revocation of any contract@). 
See also Doctor=s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (ACourts may not ... invalidate arbitration agreements
under state laws applicable only to arbitration provisions.@).





[12]  The Court=s
holding was based on Section 4 of the FAA, which states, in pertinent part: A[On request to compel arbitration, t]he court shall
hear the parties, and upon being satisfied that the making of the agreement for
arbitration ... is not in issue, the court shall make an order directing the
parties to proceed to arbitration in accordance with the terms of the
agreement. ... If the making of the arbitration agreement ... be in issue, the
court shall proceed summarily to the trial thereof.@  9 U.S.C.A. '4
(1999); see Prima Paint, 388 U.S. at n.11.  





[13]  Weeks Marine cites In re Halliburton Co., 80
S.W.3d 566 (Tex. 2002) (orig. proceeding) for the proposition that only an
agreement providing for Aone-sided arbitration@ can constitute a Astand-alone
arbitration agreement.@  We find nothing in the In re Halliburton
decision to support (or decipher) the stated proposition or to inform this
court=s consideration of whether Jimenez=s procedural unconscionability attack pertains to the
agreement to arbitrate or the agreement Aas
a whole.@  Above all, we resist the temptation to apply a
particular label to our conclusion. 





[14]  See also, e.g., Buckeye Check Cashing, 546
U.S. at 442 (addressing contract requiring arbitration of A[a]ny claim, dispute, or controversy ... arising from
or relating to this Agreement ... or the validity, enforceability, or scope of
this Arbitration Provision or the entire Agreement@); FirstMerit, 52 S.W.3d at 752 (addressing
contract providing for arbitration of Aall
disputes, claims, or other matters in question arising out of or relating to
this Loan, its interpretation, validity, performance or the breach thereof@); American Medical Technologies, Inc. v. Miller,
149 S.W.3d 265, 268 (Tex. App.CHouston [14th
Dist.] 2004, orig. proceeding) (Aany
dispute or controversy arising under or in connection with this Agreement shall
be settled exclusively by arbitration@); Dewey
v. Wegner, 138 S.W.3d 591, 594 (Tex. App.CHouston [14th Dist.] 2004, no pet.) (A[a]ny controversy or claim arising out of or relating to this
[agreement] ... or any claim or dispute between the parties to this [agreement]
... shall be settled by arbitration@). 





[15]  Jimenez testified that A[Ms. Olivo] very clearly told me that Weeks would not
pay for anything unless I signed the paperwork and >got all the paperwork in.= ... I was very worried and concerned that I would
lose not only my income but my medical benefits.  That is the only reason I
signed the paperwork Ms. Olivo sent me.  I did not understand that I would be
giving up a right to a jury trial, and I would not have signed the paperwork if
I had been told this.@ Olivo testified, AAt
no time did anyone represent that [Jimenez=s]
maintenance and cure was contingent upon his agreement to arbitrate.  On the
contrary, Mr. Jimenez understood that by agreeing to arbitrate, he would
receive additional payments as an advance against a possible award.  His only
concern was how soon it would be before he received the additional payments.@





[16]  See also In re Washington Mutual Finance,
L.P., 173 S.W.3d 189, 192B93
(Tex. App.CCorpus
Christi 2005, orig. proceeding) (issuing writ of mandamus where trial court
sustained plaintiff=s
defense to arbitration without providing both sides a fair opportunity to
present evidence); In re Jebbia, 26 S.W.3d 753, 757 (Tex. App.CHouston [14th Dist.] 2000,
orig. proceeding) (holding that evidentiary hearing must be held on material
issue of fact regarding whether enforceable agreement to arbitrate exists). [CHECK FONT SIZE]





[17]  This court is forbidden, of course, to decide
disputed areas of fact.  Brady v. Fourteenth Court of Appeals, 795
S.W.2d 712, 714 (Tex. 1990).