Elizabeth **DOLE, Secretary of Labor, U.S. Department of Labor,**
Plaintiff–Appellant,

v.

**PETROLEUM TREATERS, INC.,**
Defendant–Appellee.

No. 88–3445.

United States Court of Appeals,
Fifth Circuit.

July 6, 1989.

Rehearing Denied Aug. 25, 1989.

Linda Jan S. Pack, William J. Stone, Dept. of Labor, Washington, D.C., George R. Salem, Sol. of Labor, U.S. Dept. of Labor, Daniel Curran, Atty., Dallas, Tex., for plaintiff-appellant.

Charles E. Lugenbuhl, Lugenbuhl, Burke, Wheaton, Peck & Rankin, New Orleans, La., for defendant-appellee.

Before THORNBERRY, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The Department of Labor appeals the dismissal of its case against Petroleum Treaters, Inc., which sought to enjoin Treaters from violating the provisions of § 7 and § 15(a)(2) of the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. § 201, *et seq.*, and to recover withheld overtime compensation that was due Treaters' employees under the FLSA. The district court dismissed the case, finding that Treaters' employees are exempt from the Act because they are "seamen" under § 13(b)(6). We reverse this finding and remand for the calculation of overtime due Treaters' employees under the Act.[1]

## I. *Facts and Prior Proceedings*

Petroleum Treaters is a Louisiana corporation engaged in the servicing of oilfield platforms in south Louisiana. This service consists of clearing flow lines by using a hot oil chemical to remove paraffin build-up from the wells. The work is performed from barges that are anchored or tied to the oil wells. A two-man crew performs the maintenance of the wells and operates a "push-boat." The push boat tows the barge, which is immobile on its own, from one location to another. The crew typically works 7 days and then is off 7 days, although the actual number of days and hours of work vary. According to the uncontradicted testimony of the employees at trial, 50 to 80 percent of the two-man crew's worktime involves maintenance of the wells from the barge, with the remainder of the time spent towing the barge.

Until June 15, 1986, the employees were paid on an hourly basis and received time-and-one-half for the additional hours they worked over 40. After June 15, Treaters introduced a pay plan which provided for a "day rate" to employees. The rate is based upon a twelve hour day, with hourly increments based upon the day rate for each hour worked over the twelve hour base period. Treaters claims it went to the day rate in order to gain better control over labor costs and to maintain all the company's employees despite severe depression of the oilfield economy. While Treaters maintains the new day rate takes into account overtime factors, the employees are simply paid a flat rate per number of hours

---

1. Treaters also argued that even if the employees were not exempt, the company's pay practices nonetheless were in accord with the Act by virtue of a purported "guaranteed salary agreement" with the workers under § 7 of the Act, so that dismissal was still appropriate. The district court rejected this claim, and Treaters has chosen not to appeal this finding. We simply note that the district court was clearly correct in dismissing this argument. During the trial, Treaters admitted that it could not guarantee a set weekly salary because of the nature of the business. It only claimed that the employees were guaranteed that they would be paid for each hour they actually worked. This type of guarantee is clearly not the type provided for in § 7.

worked that is equal to the hourly wage rate they were paid prior to the change.[2]

The Secretary of Labor brought this action pursuant to § 17 of the FLSA, 29 U.S.C. § 217, to enjoin Treaters from violating the Act's overtime requirements. The Act requires overtime be paid at time-and-one-half. The Secretary sought back wages on behalf of the 32 workers involved for overtime pay earned after June 15, 1986, the date Treaters changed its system of wage payment, plus prejudgment interest on those back wages.

In defending the action, Treaters asserted that the employees were exempt from the FLSA's overtime requirements because they are "seamen" under the Jones Act, 46 U.S.C.App. § 688. Under the FLSA, 29 U.S.C. § 213(b)(6), any employee "employed as a seaman" is exempt. Because the employees are clearly "seamen" under the Jones Act, Treaters argued they should also be considered "seamen" under the FLSA. The district court agreed with Treaters and dismissed the suit. The court found it unlikely that Congress intended to ascribe a different meaning to the term under the two acts.

The court in reaching this decision refused to apply both the Secretary of Labor's interpretation of the FLSA "seamen" exemption and prior precedent of this Court. We reverse the district court's dismissal, finding the court's conclusions incorrect.[3] The court failed to define "seamen" correctly by not undertaking the required analysis under the FLSA. The inquiry must be into the particular work performed by each employee and the relative proportion of actual seaman work as defined by the FLSA to nonseaman work.

## II. Applicability of Jones Act "Seamen" to the FLSA

The employees in question are clearly Jones Act seamen. The evidence established that they are more or less permanently attached to vessels in navigation and that the activities in which they are engaged contribute to the function of the vessels. *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074–75 (5th Cir.1986). The issue then is whether the use of "seaman" by Congress in the FLSA exemptions without specifically defining the term was an indication from Congress to use the same meaning it has under the Jones Act. Treaters had the heavy burden of demonstrating that its workers "plainly and unmistakably [came] within" the scope of the exemption because of the Jones Act definition. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 44 L.Ed.2d 393 (1960).

■ Unlike the district court, we find that the definitions of seamen under the two acts are separate and independent of each other. We reach this conclusion by looking to prior precedent, the Department of Labor's interpretations of the FLSA, the legislative histories and purposes of the statutes, and the structure and wording of § 13 of the FLSA.

### A. Prior Precedent: W.D. Haden

■ In *Walling v. W.D. Haden*, 153 F.2d 196 (5th Cir.), *cert. denied*, 328 U.S. 866, 66 S.Ct. 1373, 90 L.Ed.2d 1636 (1946), this Court addressed the applicability of the seaman exemption to workers on dredge-boats. We found the exemption inapplicable by looking to what the workers were

---

**2.** Treaters explained that the new rate does take into account overtime but that it is not apparent because the company decreased the regular hourly wage. It argues that it was merely a coincidence that the new day rate when divided into amount per hour happened to be the old hourly wage.

It also explained that the only reason the employees were still paid by the hour is that that was the only computer program it had. This explanation is not persuasive. Treaters really has not changed anything. An employee is still paid for the actual number of hours worked whether it is six hours or thirteen hours. If Treaters had really switched to a daily rate, it would be paying the employees under the computer program for twelve hours regardless of the number of hours worked each day.

**3.** Because the issue on appeal reviews a legal determination made by the district court, we review the court's findings *de novo*. *Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

"employed as," and by looking to the meaning of "seaman" under the FLSA.

After noting that the FLSA does not define the term, this Court gave the term "seaman" its ordinary meaning by looking to Webster's International Dictionary, which defines it as " 'one whose occupation is to assist in the management of ships at sea; a mariner.' " 153 F.2d at 198. The Court then analyzed what the workers principally were hired to do using this ordinary meaning of the term.

We recognized that the workers had some "seamen" duties. They had to manage the dredgeboats and barges as vessels. We went on, however, to find that their primary duties involved the production of shells by dredging, a duty the Court found more properly characterized as "industrial" and "nonseamen." 153 F.2d at 199. The Court thus found that since the workers were principally "employed as" industrial workers and not seamen, the exemption preventing application of the FLSA to them did not apply.

*W.D. Haden* controls this case. Here, the workers clearly have some seamen duties in that they must operate their vessels, the push-boat and the barge, between oil wells. They are principally employed, however, to service and maintain the wells, a duty that is properly characterized as a "nonseamen" duty. It is uncontroverted that at least half of their time is spent in this maintenance. Thus, under the reasoning of *W.D. Haden*, the exemption does not apply to the two-man crews, and they are entitled to receive the overtime provided for them under the FLSA. But to Treaters' claim that the law has changed since

1946 and the *W.D. Haden* case, we find other support as well for our holding.[4]

**B.  The Secretary's Interpretations of the Seaman Exemption**

The interpretation of the seaman exemption by the Secretary of Labor has always been consistent with *W.D. Haden*. The interpretation of the exemption states:

> [A]n employee will ordinarily be regarded as "employed as a seaman" if he performs ... service which is rendered primarily as an aid in the operation of [a] vessel as a means of transportation, provided he performs no substantial amount of work of a different character.

29 C.F.R. § 783.31.[5] The Secretary's interpretation also provides:

> [A]n employee will be regarded as "employed as a seaman" if his work as a whole meets the test stated in § 783.31, even though during the workweek he performs some work of a nature other than that which characterizes the service of a seaman, if such nonseaman's work is not substantial in amount. For enforcement purposes, the Administrator's position is that such differing work is "substantial" if it occupies more than 20 percent of the time worked by the employee during the workweek.

29 C.F.R. § 783.37.[6] These findings of the Department of Labor are entitled to great weight by the courts. *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 297, 105 S.Ct. 1953, 1959, 85 L.Ed. 2d 278 (1985). The fact that the interpretation has not varied since the FLSA's enactment also entitles it to "great respect." *Chemehuevi Tribe of Indians v. Federal*

---

**4.** Treaters argues that *W.D. Haden* should not apply because the definition of seamen has broadened under the Jones Act since *W.D. Haden* was decided. We find, however, that the definition under the FLSA has never been tied to the Jones Act so that the broadened definition under the Jones Act is irrelevant to an inquiry under the FLSA.

**5.** 29 C.F.R. § 783.31 was first established in 1939. See Interpretative Bulletin No. 11, Wage and Hour Administration, U.S. Department of Labor (April 1939).

**6.** This interpretation was first established in 1948. See Interpretative Bulletin No. 11, Wage and Hour Administration, U.S. Department of Labor (March 1948). The evidence establishes that at least 50% of the workers' time is spent on non-seamen duties in this case. We note that an employer typically loses an exemption under the Secretary's interpretation of the Act whenever an otherwise exempt employee spends 20 percent or more of his worktime performing nonexempt duties. *E.g.*, 29 C.F.R. § 541.1(e) (executive exemption); 29 C.F.R. § 541.2(d) (administrative exemption); 29 C.F. R. § 541.3(d) (professional exemption).

*Power Commission,* 420 U.S. 395, 410, 95 S.Ct. 1066, 1075, 43 L.Ed.2d 279 (1975).

The Secretary's interpretation, as did this Court in *W.D. Haden,* calls for an examination of the nature of the work actually performed by the employees and of the comparative amount of seamen versus nonseamen duties, without making any reference to the Jones Act. This inquiry is consistent with the entire FLSA's underlying theme that "what each employee actually does determines its application to him." 153 F.2d at 196.

The Ninth Circuit has expressly adopted the Secretary's interpretation and other circuits have applied an analysis that parallels *W.D. Haden* and the Secretary's interpretation. *See Worthington v. Icicle Seafoods, Inc.,* 796 F.2d 337, 338 (9th Cir.1986) (decision upon reconsideration following remand by Supreme Court) (adopting 29 C.F.R. § 783.31 and § 783.37 as standard for applying seaman's exemption); *Louviere v. Standard Dredging Co.,* 239 F.2d 164, 165 (5th Cir.1956) (employee found to be within seaman exemption under FLSA because "sole employment was as a deckhand on the tug."); *Sternberg Dredging Co. v. Walling,* 158 F.2d 678, 681 (8th Cir.1946) (dredgmen, while having some seamen duties, not within FLSA exemption).

Congressional actions after the interpretation by the Secretary also indicate acquiescence. In 1961, Congress revisited seamen coverage making a few changes. It did not seek, however, to change the interpretative definition given by the Secretary as to who are seamen. *See* 29 C.F.R. § 783.30 (provisions relating to § 13(a)(14) and 13(b)(6) of the Act amended); *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

## C. *History and Purpose of the FLSA*

Treaters concedes that deference is given appropriately to an agency's interpretation.

Treaters argues, however, that courts have often interpreted statutes in a manner contrary to the administrative viewpoint when the interpretation goes against " 'the clear meaning of a statute, as revealed by its language, purpose, and history.' " *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed. 2d 980 (1979) (quoting *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)). We thus turn to the legislative history, purpose, and language of the FLSA.

Treaters argues that Congress could not have intended two different meanings of "seamen" because that would allow many employees to receive the protections of the Jones Act as seamen while receiving the benefits of the FLSA because of their "nonseamen" duties.[7] This result, however, is not inconsistent because of the different aspect of the employment relationship that each act regulates. As the Court of Appeals of the First Circuit stated:

"What concerns us here and now is not the scope of the class of seamen at other times and in other contexts. Our concern is to define the meaning for the purpose of a particular statute which must be read in the light of the mischief to be corrected and the end to be attained."

*Walling v. Bay State Dredging & Contracting Co.,* 149 F.2d 346, 349 (1st Cir.), *cert. denied,* 326 U.S. 760, 66 S.Ct. 140, 90 L.Ed. 457 (1945) (quoting Justice Cardozo in *Warner v. Goltra,* 293 U.S. 155, 159, 55 S.Ct. 46, 48, 79 L.Ed. 254 (1934)).

The Jones Act gives an injured employee the right to seek damages at law where the injury or death suffered was in the course of his employment. 46 U.S.C.App. § 688; *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d at 1968 n. 1. The net is then to be cast broadly to maximize the scope of the remedial coverage. 781 F.2d at 1070.

---

**7.** We recognize that many Jones Act seamen will also be seamen and exempt under the FLSA. In common parlance, "sailors" obviously meet both definitions.

The FLSA is directed at a wholly different aspect of the relationship—compensation. It "was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1948) (quoting Message of the President to Congress, May 24, 1934). The exemptions then have been drawn narrowly under the FLSA to minimize the number of employees who lose the Act's protections. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. at 392, 80 S.Ct. at 456; *Phillips v. Walling,* 324 U.S. at 493, 65 S.Ct. at 808; *Brennan v. Greene's Propane Gas Service, Inc.,* 479 F.2d 1027, 1032 (5th Cir.1973).

In the FLSA's legislative history of the exemption, there is a lack of reference to the Jones Act. The consensus of the history is rather that the use of the word "seaman" was meant to be in its ordinary meaning.[8] To go beyond the ordinary meaning to expand the definition under the authority of a separate act clearly would frustrate congressional intent, especially where the other act has a different purpose.

Treaters argues that Congress intended the in pari materia doctrine to apply to the joint use of the term "seamen" under the Jones Act and the FLSA.[9] *See Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) (The Supreme Court found in pari materia doctrine applicable between the Indian Reorganization Act of 1934 and the 1972 Equal Employment Opportunities Act.). The doctrine, however, is not appropriate where the acts clearly have different purposes and each statute's protection is to be construed as broadly as possible. *See Wm. Spencer & Son Corp. v. Lowe,* 152 F.2d 847, 848 (2d Cir.1945), *cert. denied,* 328 U.S. 837, 66 S.Ct. 1012, 90 L.Ed.2d 1613 (1946) (no decisional conflict where a barge worker was found to be a seaman under the Social Security statute but held not to be one under the Longshoremen's and Harbor Workers' Compensation Act).

### D. *Structure and Wording of the FLSA Exemption of Seaman*

Looking to the structure of the exemptions also supports the Secretary's interpretation of seamen. When Congress enacted the exemptions, it listed specific statutes as references in defining some of the exemptions. 29 U.S.C. § 213(b)(1) (FLSA exemption controlled by § 303 of Motor Carrier Act of 1935), (b)(2) (FLSA exemption controlled by Part I of Interstate Commerce Act), and (b)(3) (FLSA exemption controlled by title II of Railway Labor Act). Congress, however, did not reference any statute as to the seaman exemption. If it had intended the meaning of seamen in the Jones Act to govern, and if it followed the pattern of the statute, it would have referred specifically to the Jones Act as it did with other exemptions that had applicable definitions.

The wording of the statute also clearly supports a meaning apart from the Jones Act. We stated in *W.D. Haden:*

> [T]he words of the exemption are: "Employees *employed as* seaman". The italicized words mean something; they are not mere tautology. They warn us to look to what the employees do, and not rest on a matter of a name, or the place of their work.

153 F.2d at 199 (emphasis in original). It is not enough to consider a worker's status under other statutes as a basis for determining his status under the FLSA.

### E. *Impracticality to Treaters*

Finally, the company argues that paying overtime is impractical. Yet, it has continued to use the same method of accounting for hours worked by each employee under its current rate schedule as it did when it was paying overtime. It still requires its

---

8. For a thorough review of the legislative history of the seaman exemption under the FLSA, *see* 29 C.F.R. § 783.28–29; *Walling v. Bay State Dredging & Contracting Co.,* 149 F.2d at 349–50.

9. Statutes are "in pari materia when they relate to the same person or class of persons, even though the statutes contain no reference to each other...." *United States v. Garcia,* 676 F.2d 1086, 1091 (5th Cir.1982).

employees to record the number of hours worked. It continues to depend upon the employees' reliability. There is no question that payment of overtime will increase wage expenses. This obvious fact, which occurs whenever the statutes applies, is no justification for not paying overtime under the Act. *W.D. Haden*, 153 F.2d at 199.

### III. *Conclusion*

We find that the district court incorrectly used the definition of seamen under the Jones Act to determine if the workers were exempt from entitlement to overtime pay under the FLSA. It is well established that the term under the two acts has different, independent meanings.

Under the FLSA definition, we find that the workers spent at least half of their time maintaining and servicing the oil wells, a "nonseamen" duty. They were thus not "employed as" seamen and were entitled to receive overtime wages. We remand to the district court to determine the overtime and prejudgment interest due these workers and to enjoin Treaters from further violation of the FLSA requirements.

REVERSED AND REMANDED.