United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 6, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

---

No. 02-31138

---

STEPHEN BROWN,

Plaintiff-Appellee,

VERSUS

NABORS OFFSHORE CORPORATION,

Defendant-Appellant.

---

Appeal from the United States District Court
For the Eastern District of Louisiana

---

Before KING, Chief Judge, DAVIS and BENAVIDES, Circuit Judges.

DAVIS, Circuit Judge.

Nabors Offshore Corporation (Nabors) challenges the district court's order, denying Nabors' motion to compel arbitration and stay Brown's Jones Act, general maritime action pending arbitration. The question we must address is whether Brown's action against his employer, Nabors, falls within the exclusion to the Federal Arbitration Act (FAA) which exempts from its application "contracts of employment of seamen, railroad employees,

or any other class of workers engaged in foreign or interstate commerce."  For the reasons that follow, we conclude that the district court correctly concluded that, because Brown is a seamen, the arbitration clause Nabors contends is included in his contract of employment is outside the scope of the FAA.

I.

Stephen Brown was employed as a roustabout for Nabors on the DOLPHIN-110, a jack-up rig located in the Gulf of Mexico off the coast of Louisiana.  In late April or early May of 2001 (after Brown's employment by Nabors had already begun), Nabors sent Brown a letter notifying him of the adoption of the Nabors Dispute Resolution Program ("NDRP"), which required <u>inter</u> <u>alia</u> that all disputes between Nabors and its employees be resolved through arbitration. Enclosed with the letter was a separate acknowledgment form for the employee to sign confirming his notice and understanding of the agreement.  The NDRP documents, however, provided that in the event the employee failed to return the acknowledgment form, "[y]our continued employment after the date you receive the enclosed documents will constitute your acceptance of the Program."  Brown did not return the signed acknowledgment form, and the materials were not returned as undeliverable.[1]

On October 19, 2001, Brown slipped on a piece of waste

---

[1] Because Brown did not raise it in the district court, we do not consider his argument that Nabors' mailing of the letter announcing the adoption of the NPRP did not create an enforceable arbitration agreement.

2

packaging while descending a staircase on the rig and fell, suffering injuries to his lower back. At the time of Brown's injury, the rig was engaged in workover operations on a well in preparation for oil and gas production.

In February 2002, Brown filed suit against Nabors in federal district court under the Jones Act and general maritime law seeking damages predicated on negligence and unseaworthiness, along with a claim for maintenance and cure. Nabors filed a motion to compel arbitration and to stay or dismiss this action pending such arbitration, arguing that Brown had agreed under the terms of the NDRP to submit any grievances to mandatory, binding arbitration. Brown opposed Nabors' motion on the grounds that, as a "seaman," he was exempt from being compelled to arbitrate.

Section 1 of the Federal Arbitration Act ("FAA") exempts from arbitration "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (2000). Nabors argued that Brown fell outside of the § 1 exemption because he was not involved in the transportation of goods in commerce.

The district court held that, because Brown was a seamen and a member of an enumerated class of persons exempt from the application of the FAA, he was expressly excluded from FAA's coverage. More particularly, the court concluded that, because Brown was a seamen, he was expressly excluded from coverage without the necessity of establishing that he was actually engaged in

3

foreign or interstate commerce. Alternatively, the court concluded that no record evidence negated that Brown's work as a crewmember aboard the DOLPHIN-110--producing oil and gas for use in interstate commerce--was work engaged in interstate or foreign commerce.

In this appeal, Nabors argues that although Brown is a seamen for purposes of the Jones Act, he does not fall within the scope of the FAA exemption because he was not engaged in the transportation of goods in foreign or interstate commerce.

## II.

Nabors does not--indeed it could not--challenge that Brown is considered a seamen and member of the crew of the DOLPHIN-110 for purposes of the Jones Act.[2]  Nabors argues that it is not enough for Brown to show that he is a seamen; to trigger the exemption, Brown must also show that he was engaged in interstate or foreign commerce.

In other words, Nabors would have us read the statutory language--"engaged in . . . commerce" as limiting all three named groups–seamen, railroad employees and "any other class of workers." Specifically, he argues that the "engaged in . . .commerce" would limit the exemption to those seamen directly involved in the transportation of goods in foreign or interstate commerce.  Because

---

[2] See Offshore v. Robison, 266 F.2d 769 (5th Cir. 1959), approved in principle by the Supreme Court in McDermott International v. Wilander, 498 U.S. 337 (1991).  See also Colomb v. Texaco, 736 F.2d 218, 221 (5th Cir. 1984), collecting cases holding that crew members aboard drilling and other special purpose vessels are seamen as a matter of law.

Brown was a roustabout or general laborer on a jack up drilling or workover rig, Nabors contends that he cannot qualify as a worker engaged in transportation of goods in foreign or interstate commerce.

Brown argues, on the other hand, that the § 1 exemption applies to all seamen, all railroad employees and further that the exemption applies to all other transportation workers engaged in commerce whose jobs are sufficiently similar to those in the enumerated classes, seamen and railroad workers.

We have not before specifically addressed the precise question presented to us. In Rojas v. TK Communications, Inc.,[3] we considered whether a disc jockey who sought recovery against her employer for sexual harassment fell within the "engaged in foreign commerce" exemption to the FAA. In rejecting Rojas' argument that she fell within the exemption, we followed a Sixth Circuit opinion Asplundh Tree Expert Co. v. Bates,[4] and stated that "the exclusionary clause of § 1 in the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." Id. at 748. Although this language is *dicta*, our analysis supports Brown's argument that the

---

[3] 87 F.3d 745 (5th Cir. 1996)

[4] 71. F.3 592 (6th Cir. 1995).

5

limiting phrase "engaged in foreign or interstate commerce" only applies to "any other class of workers" and not to the specific categories of workers enumerated, seamen and railroad employees.

Nabors argues that the Supreme Court decision in <u>Circuit City Stores, Inc. v. Adams</u>,[5] supports its interpretation of the exemption. In <u>Circuit City Stores</u>, the Court considered whether an employee of Circuit City, a national retailer of consumer electronics, fell within the § 1 exemption. The employee argued that the words "contract of employment of . . . any other class of workers engaged in . . . commerce" included all contracts of employment so long as they involved commerce within the reach of Congress under the Commerce Clause. <u>Id</u>. at 114. The court rejected this argument and reasoned that ". . . the words any other class of workers engaged in . . . commerce" constitute a residual phrase following, in the same sentence, explicit reference to "seamen" and "railroad employees." <u>Id</u>. Construing the residual phrase to exclude all employment contracts fails to give independent effect to the statute's enumeration of the specific categories of workers which precedes it; there would be no need for Congress to use the phrases "seamen" and "railroad employees" if those same classes of workers were subsumed within the meaning of the "engaged in commerce residual clause." <u>Id</u>. The court then explained that § 1 called for the application of the maxim *ejusdem generis* and that

[5] 532 U.S. 105 (2001).

"[u]nder this rule of construction, the residual clause should be read to give effect to the term 'seamen' and 'railroad employees' and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it; the interpretation of the clause pressed by respondent fails to" produce these results. Id. at 114-115.

We are satisfied that the Supreme Court's reading of this exemption is fully consistent with our reasoning in Rojas. The Supreme Court referred to seamen and railroad employees as "enumerated categories of workers" and held that the residual class of workers--"any other class of workers engaged in commerce"-- should be limited by reference to the enumerated workers. Circuit City Stores, 532 U.S. at 114-115. Contrary to Nabors' argument, the Court gave no signal that it would limit the meaning of the enumerated workers by the limitation placed on the residual class of workers, those "engaged in . . . commerce."

Further language in the opinion supports the view that employment contracts of the enumerated workers--seamen and railroad workers--are, without limitation, exempt from the application of FAA:

> We see no paradox in the Congressional decision to exempt the workers over whom the commerce power was most apparent. To the contrary, it is a permissible inference that the employment contracts of the class of workers in § 1 were excluded from the FAA precisely because of Congress's undoubted authority to govern the employment relationships at issue by the enactment of statutes specific to them. [Discussing existing statutes and

7

statutes in the pipeline relating to seamen and railroad workers.] It is reasonable to assume that Congress excluded "seamen" and "railroad employees" from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers. Id. at 120-121.

We conclude, therefore, that Circuit City supports Brown's view that, as a seamen, § 1 excludes his employment contract from the application of the FAA, even if he was not "engaged in . . . commerce."[6]

Finally, Nabors argues that the term "seamen" has no universal meaning under all statutes and that the differing purposes of the FAA and the Jones Act require that different meanings be attached to this term. In support of their argument, they rely primarily on Dole v. Petroleum Treaters, Inc., 876 F.2d 518 (5th Cir. 1989). The question presented in Dole was whether seamen were entitled to be paid time and a half for overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. Under 29 U.S.C. § 213(b)(6) of the Fair Labor Standards Act, any employee "employed as a seamen" is exempt from the overtime requirements of the Act.

The panel concluded that "seaman" under the Fair Labor Standards Act had a different meaning than under the Jones Act.

_____

[6] Because our disposition of this case does not require it, we do not consider Brown's argument that his activity to develop oil and gas for interstate commerce supports a conclusion that he was engaged in commerce. We also do not consider the argument that the rig and its crew are engaged in commerce by moving the rig and its equipment and supplies from location to location in the Gulf of Mexico. See Manuel v. P.A.W. drilling & Well Service, Inc., 135 F.3d 344 (5th Cir. 1998).

8

<u>Id</u>. at 524.  Because the employees at issue in <u>Dole</u> were employed to service and maintain oil wells, the court concluded that the exemption did not apply.  <u>Id</u>.

We conclude, however, that <u>Dole</u> is not helpful in analyzing today's case primarily for two reasons.  First, the panel in <u>Dole</u> accepted the interpretation of the seamen exemption set forth by the Secretary of Labor in its regulations:

> An employee will ordinarily be regarded as "employed as a seamen" if he performs . . . service which is rendered primarily as an aid in the operation of [a] vessel as a means of transportation, provided he performs no substantial amount of work of a different character. <u>Id</u>. at 521, citing 29 C.F.R. §  783.31.

Second, the panel relied heavily on the legislative history of the Fair Labor Standards Act.  <u>Id</u>. at 522-523.  Based on this legislative history, the court concluded that the Jones Act and the Fair Labor Standards Act have different purposes and each statute's protection was to be construed as broadly as possible.  <u>Id</u>. at 522. Nothing comparable to the legislative history and administrative rules this court relied on in <u>Dole</u> to narrow the definition of seamen under the Fair Labor Standards Act are present in this case.[7]

<u>Conclusion</u>.

For the reasons discussed above, the district court correctly concluded that the arbitration clause relied upon by Nabors is

---

[7] <u>See</u> <u>also</u> <u>Buckley v. Nabors Drilling U.S.A., Inc.</u>, 190 F. Supp.2d 958 (S.D. Tex. 2002); <u>Pittman v. Nabors Drilling U.S.A., Inc.</u>, No. 02-1719 (E.D. La. filed May 6, 2003).

excluded from the application of the FAA.  We, therefore, affirm the district court's judgment and remand this case to the district court for further proceedings.

AFFIRMED AND REMANDED.