In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00123-CR


______________________________




JOHN GEORGE MCGUIRE, III, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 115th Judicial District Court


Upshur County, Texas


Trial Court No. 15,085




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 After his conviction by a jury of aggravated assault of a child, John George McGuire, III, was
sentenced to fifteen years' imprisonment and fined $5,000.00. The conviction was based upon the
testimony of a twelve-year-old girl that while McGuire was staying overnight at her home, she was
awakened by the pain of McGuire's penis being inserted in her vagina and discovered him atop her. 
McGuire denied assaulting her.

 McGuire contends on appeal that his counsel was so ineffective as to violate the
constitutional requirement of effective assistance of counsel. 

 The standard of testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668 (1984). To prevail on this claim, an appellant must prove by a
preponderance of the evidence (1) that his counsel's representation fell below an objective standard
of reasonableness and (2) that the deficient performance prejudiced the defense. Strickland, 466 U.S.
at 689; Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the
appellant must prove that the attorney's representation fell below the standard of prevailing
professional norms and that there is a reasonable probability that, but for the attorney's deficiency,
the result of the trial would have been different. Ex parte Martinez, 195 S.W.3d 713, 730 (Tex.
Crim. App. 2006); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard,
a claimant must prove that counsel's representation so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a just result. Strickland, 466
U.S. at 686. 

 This requires a showing that counsel made errors so serious that counsel was not functioning
as "counsel" guaranteed the defendant by the Sixth Amendment. Ex parte Nailor, 149 S.W.3d 125,
130 (Tex. Crim. App. 2004). 

 This Court will neither second-guess through hindsight the strategy of counsel at trial, nor
will the fact that another attorney might have pursued a different course support a finding of
ineffectiveness. Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another attorney,
including appellant's counsel on appeal, might have pursued a different course of action does not
necessarily indicate ineffective assistance. Harner v. State, 997 S.W.2d 695, 704 (Tex.
App.--Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 We recognize that in this case, no post-trial hearings were conducted, and there is nothing
in the record to indicate why counsel conducted the trial as he did or the reasoning which may have
prompted counsel's actions or lack thereof. With that caveat, we turn to the behavior pointed out
by counsel on appeal. 

 McGuire first suggests his counsel was ineffective because he introduced evidence at
guilt/innocence about two other situations in which McGuire had engaged in sexual conduct with
girls who were younger than the age for consensual sex, and he also questioned McGuire about the
existence of his MySpace page and his contacts with high school and junior high school girls through
that means of communication. 

 As to the questions concerning his sexual interactions with underaged girls, both of the girls
with whom he had copulated were younger than McGuire at the time he had sex with them. 
McGuire was twenty at the time of trial. In one of these relationships, while he was a junior in high
school, he was dating a freshman. As to the other, McGuire testified as to a relationship with a girl
who was seventeen (and about to turn eighteen) at the time of trial. Therefore, both of these
relationships were with females about three years younger than he. 

 On cross-examination, the State attacked those relationships based on the age difference,
pointing out that the girls were both underage at the time of the relationships.

 Counsel argues strongly that it was ineffective per se for defense counsel to introduce such
evidence. He points out that it would encourage the jury to find him guilty not of the crime at bar,
but generally for being a bad person who had sex with minors. That argument has a good deal of
merit. Indeed, the Texas Rules of Evidence specifically provide that such evidence is inadmissible
for precisely the reason argued by appellate counsel (although the stricture has been much weakened
by numerous exceptions). See Tex. R. Evid. 404(b), 412(b), (c). 

 However, there is also no evidence to explain why that testimony was elicited. Where an
appellate record is silent as to why trial counsel failed to take certain actions, the appellant has failed
to rebut the presumption that trial counsel's decision was in some way--be it conceivable or
not--reasonable. See Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). In this case,
there is no record at any level to indicate why counsel chose to take or declined to take any of these
actions, leaving us with only speculation as to his reasoning. (1) 

 Moreover, if the appellate court can imagine a strategic motive to explain the ineffective
assistance claim, then the reviewing court may not sustain the appellant's point of error. Freeman
v. State, 125 S.W.3d 505, 511 (Tex. Crim. App. 2003); Bryant v. State, 282 S.W.3d 156, 168 (Tex.
App.--Texarkana 2009, pet. dism'd, untimely filed, pet. ref'd [2 pets.]).

 The stated exception to that requirement exists only if the behavior "was in fact 'so
outrageous that no competent attorney would have engaged in it.'" Mata, 226 S.W.3d at 430. Thus,
utilizing reasoning that curbs application to only very limited circumstances, some claims may be
disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." 
Massaro v. United States, 538 U.S. 500, 508 (2003). 

 The State argues first that an exception to Rule 404 of the Texas Rules of Evidence could
apply, and posits a number of possible reasons why it may not apply, but there seems to be no
genuinely apparent applicable exception. However, it is also possible (despite the State's argument
attempting to focus on the extreme age differential of three years between McGuire and the younger
girl) that counsel was introducing the evidence to show the jury that McGuire was not a pedophile
and that his interests were directed (and had been directed since he was in high school) toward
females somewhat close in age to him, rather than children. It could also show his pattern of
consensual activities with willing females, rather than the forcible rape alleged in this case. Further,
sometimes a testifying defendant can inadvertently open the door to questions on cross-examination
that trial counsel would seldom be able to accurately anticipate. Some practitioners subscribe to the
theory that it is better to have the defendant testify about possibly damaging testimony on direct
testimony in order to demonstrate candor, rather than having it become divulged during cross-examination. In the absence of anything in the record to show otherwise, and in light of the context
set out above, we must conclude that this is at least an arguable tactical basis for introducing the
evidence, and not one so beyond the bounds of reason as to show constitutionally ineffective counsel.

 Regarding the questioning by his own attorney about McGuire's activities on MySpace, as
an example of ineffective assistance, appellate counsel points out that the State used that information
on cross-examination to suggest wrongdoing by McGuire because females of that age range were
listed as "friends" on his site. However, that evidence shows entirely nonsexual communication and
provides no support for the State's position, although the State attempted to portray the evidence in
a form that would have done so. It is reasonable for counsel to use this evidence to show McGuire's
normal relationships with young women, rather than the abnormal pedophilic relationships posited
by the State. Again, trial counsel may have believed that McGuire's voluntary revelations on direct
examination concerning contacts on MySpace would have enhanced his believability concerning the
more meaty portions of his testimony. There is at least an arguable tactical basis for introduction of
the evidence.

 McGuire also argues that counsel was ineffective for having failed to lodge an objection
when the State questioned McGuire about the nature of and language used in his MySpace
communications with a young correspondent on that medium, Mady Wilson. The State does not
respond to this argument. Upon examination of the record, it appears that he engaged in some 
gratuitous commentary of McGuire in its questioning, and promised the jury additional proof that
it never subsequently provided. This exchange occurred:

 Q. [By the State] Mady Wilson, let's talk about her because there's going
to be testimony if you don't admit it under oath here from her that as at the age of
fourteen you sent My Space messages to her stating how pretty she was and you
wanted to get to know her better. Do you remember doing that?


 A. [By McGuire] Can I ask you a question real quick?


 Q. No, sir. This is how it works. I ask you the questions, Mr. McGuire. 
Did you send Mady Wilson a My Space message stating you thought she was pretty
and you wanted to get to know her better, yes or no?


 A. No sir.


Wilson did not testify, and there was no further proof on this matter. The comment by the State was
itself objectionable; the State had represented itself to be effectively testifying about what it
purported to be the facts before posing any question. This tactic created a classic conundrum for
McGuire. Is it better to voice an objection to an improper statement such as this and risk
emphasizing it (despite the sometimes dubious and perhaps hollow temporary victory of having the
trial court give an instruction to disregard), thereby cementing the statement in the memory of the
jurors' minds, or is it preferable to move quickly past it in the hope that the jurors either relegate it
to its proper role or forget that it was said? Although another attorney might have handled the
situation differently (and firmly believed that was the most effective thing to do), that decision can
be simply a matter of trial strategy and tactics. Neither tactic is patently erroneous. 

 McGuire also argues that trial counsel's decision to not object to questions to McGuire by
the State about his relationship with his father and the circumstances surrounding his moving out of
an apartment which McGuire shared with Shane Putnam was indefensible. McGuire's father, once
an active Baptist minister, was evidently drinking alcohol; there was testimony that Putnam was
engaged in a sexual relationship with McGuire's married sister--a circumstance which so distressed
McGuire that he moved out of the apartment, rendering himself homeless. The State suggests that
these could be seen as mitigating, and thus counsel had no reason to object. However, this evidence
was offered at the guilt/innocence phase of trial. The concept of mitigation presupposes that
McGuire was guilty, a matter that had not yet been decided (but should receive lesser punishment). 
Those matters were not relevant to this prosecution. However, counsel could have decided to allow
the matter to proceed in an attempt to humanize his client, rather than leaving him as the faceless
attacker of children he was being painted by the State. That reasoning has its weaknesses, as this
evidence could also provide support for showing how the combination of stresses might make it
easier for an otherwise normal person to lose self-control in a single instance. Nevertheless, there
is at least an arguable basis for choosing to sit mute while the State questioned McGuire on these
matters. Even if there were no arguable basis for the lack of an objection, although the injection of
these irrelevancies would serve to unnecessarily embarrass others (McGuire's father, sister, and
former friend and roommate), it is difficult to understand how they would harm McGuire in the trial. 

 McGuire also argues that counsel was inadequate for failing to question the admissibility of
his statements made to police investigator Roxanne Warren. Their interaction occurred while
McGuire was in custody. She testified that she told McGuire that the girl had accused him, and that
he denied the act, and could provide no plausible reason why she might have concocted such a story. 
McGuire argues that counsel was ineffective because he did not attempt to play the recording of the
interview, rather than merely allowing the investigator to recite her version of what McGuire had
stated during the interrogation, including her response to McGuire when he had asked her if she
believed him. The response was no. 

 The recording to which McGuire refers is not contained in the record. Even had it been
included, there is no indication of the reasoning of counsel in failing either to object or offer the
video recording itself as evidence. It very well may be that trial counsel believed that allowing the
jury to view the recorded interview would have served to damage McGuire's case, not help it. In
the absence of any information that would allow this Court to make an informed decision, we cannot
conclude for all purposes that counsel was ineffective in this instance. 

 McGuire next argues that counsel was not effective because he did not object to testimony
by Officer Warren about the truthfulness of the complainant. The State first elicited testimony from
Warren that twelve-year-old girls were, in her experience, not capable of maintaining a detailed lie
over a period of weeks. The State then asked:

 Q. In your opinion in this case did the child appear to be truthful from the
beginning through all the other witnesses you interviewed and all the evidence you
reviewed and received in this case?


 A. [By Warren] Yes.


Counsel did not object. McGuire is absolutely correct in stating that such testimony is improper and
inadmissible. Expert testimony that a particular witness is truthful is inadmissible under Rule 702
of the Texas Rules of Evidence. Tex. R. Evid. 702. Similarly, an expert may not give an opinion
that the complainant or a class of persons to which the complainant belongs is truthful. Yount v.
State, 872 S.W.2d 706, 710 (Tex. Crim. App. 1993). Instead of experts, it is jurors who must draw
"conclusions concerning the credibility of the parties in issue." Id. Further, nonexpert testimony
may be offered to support the credibility of a witness in the form of opinion or reputation, but "the
evidence may refer only to character for truthfulness or untruthfulness." Tex. R. Evid. 608(a)(1). 
A lay witness may not, under Rule 608, testify as to the complainant's truthfulness in the particular
allegations. See Schutz v. State, 957 S.W.2d 52, 72 (Tex. Crim. App. 1997); Fuller v. State, 224
S.W.3d 823, 832-33 (Tex. App.--Texarkana 2007, no pet.). Further, evidence of truthful character
may only be offered "after the character of the witness for truthfulness has been attacked by opinion
or reputation evidence or otherwise." Tex. R. Evid. 608(a)(2).

 There is no apparent reason for defense counsel to allow a police officer to testify to this
ultimate issue of fact without objection--unless counsel had some reason to believe that the response
might be that in his opinion, the victim was lying. It would be an understatement to say that this
result is unlikely. However, even though no reason is apparent to this Court, we are confronted with
a situation where there is nothing in this record to indicate why counsel did not object. We also note
that a single question was involved, and not one that was part of a pattern of failures to object to such
testimony. 

 Where an appellate record is silent as to why trial counsel failed to take certain actions, the
appellant has failed to rebut the presumption that trial counsel's decision was in some way--be it
conceivable or not--reasonable. See Mata, 226 S.W.3d at 431. In this case, there is no record at any
level to indicate why counsel chose to take certain actions or declined to object. In the absence of
such a record, and in the lack of anything that would indicate such completely ineffective assistance
as could be shown without such a record, we overrule the point of error. We cannot conclude that
counsel was ineffective for failing to object to this singular question and response. In so doing, we
distinguish this case from Fuller, 224 S.W.3d at 836-37, in which we determined that the repeated,
unfettered, and unchecked bolstering of the victim by multiple representations of the victim's
truthfulness without objection to be so pervasive during the trial that ineffective assistance of counsel
was shown on the face of the record.

 However, even had we found ineffective assistance in this particular situation, meeting the
requirements of the first prong of the Strickland test, the appellant must also show that counsel's
performance prejudiced the defense. Strickland, 466 U.S. at 692. It is not enough for the defendant
to show that the errors had some conceivable effect on the outcome of the proceeding. Id. at 693. 
Instead, the Strickland prejudice prong requires the defendant to show that there is "a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different." Id. at 694; Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

 A reasonable probability is a probability sufficient to undermine the court's confidence in
the outcome. Strickland, 466 U.S. at 694. When addressing this second prong of Strickland, the
reviewing court should examine counsel's errors not as isolated incidents, but in the context of the
overall record. Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). 

 The Texas Court of Criminal Appeals recently reiterated that a defendant is promised a "fair
trial, not a perfect one." Davis v. State, 203 S.W.3d 84, 849 (Tex. Crim. App. 2006). In this case,
the single improper question and answer, although clearly of such a nature as to be harmful, are not
so flagrant in view of the remainder of the proceedings as to create the requisite "reasonable
probability" that but for the error, the result of the proceeding would have been different. 

 McGuire next argues that counsel was ineffective because he did not ask that the jury be
instructed that his failure to testify during the punishment stage of the trial could not be considered
as a factor in determining his punishment. Such an instruction is required upon request. Beathard
v. State, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989). McGuire testified at guilt/innocence, but not
at punishment. McGuire suggests that this is error and that the harm caused by the error was
magnified when the State made a comment during closing arguments that could bring attention to
his failure to testify. The decision to request this instruction is made by counsel. Conceivably, he
might not have wanted to seek such an instruction. Further, McGuire had testified at the
guilt/innocence phase of the trial and some damage to his credibility had been afflicted on him by
the State during cross-examination; trial counsel may have believed it best not to remind the jury of
the damaged credibility that McGuire's testimony might have engendered. On the other hand, taking
into account the general stricture that what happens at guilt/innocence can be considered at
punishment, counsel may have believed that the jury would treat him as having already testified, and
thus no instruction to disregard his failure would be helpful. 

 In the absence of a record to show why trial counsel made no request for the instruction, we
cannot conclude that error has been shown. 

 McGuire further argues that counsel was ineffective because he did not object to the
following part of the State's colloquy during final arguments at punishment. The State was
questioning Linda Keller, a member of the community supervision department, when the following
exchange occurred:

 Q. [By the State] Okay. You've been here in Upshur County for the last
two and a half years since I've been the elected DA in Upshur; is that correct?

 

 A. [By Keller] Yes.

 

 Q. We have had, to your knowledge we have had other jury trials like this
where people were on trial for aggravated sexual assault of children during that time
span, would you agree?

 

 A. Yes.

 

 Q. Are you aware of any prior jury during the last two and a half years
that I've been in Upshur County placing someone on probation for aggravated sexual
assault of a child?

 

 A. I'm not aware of any, no.

 

 Q. Now I want to talk a little bit about those that have been placed on
probation. People have received probation before, correct?

 

 A. Yes.

 

 Q. For this type of offense, correct?

 

 A. Yes.

 

 Q. Have some of those individuals that have received a probated sentence
gone out, sought, and completed another sexual assault against another child?

 

 A. Yes, they have.

 

 Q. That is not uncommon for those placed on supervision for this type
of offense, is it?

 

 A. No, sir.


The State continued his questioning by discussing reoffenders, the difficulty of changing a pattern
of behavior and re-emphasizing the possibility of another child being victimized. On redirect,
defense counsel skewered the officer by questioning her about her knowledge of this particular
defendant, knowledge which simply did not exist. He then went on to question her about the efficacy
of the various programs with some defendants and elicited the answer that for some probationers,
the programs worked well. 

 McGuire argues that the question asking about what other juries had done, with his focus
upon how those other juries had refused to recommend community supervision for such an offender
is improper on its face. The propriety of the scope of evidence at punishment is set out by
Article 37.07, Section 3 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann.
art. 37.07, § 3 (Vernon 2006). The list there is inclusive, and even the stated factors are extremely
wide. Even the list, however, discusses the admissibility of evidence about the defendant who is
before the court and the case at bar. The testimony is far removed from that area. This is a plea to
be as strict as all the other juries in the county have been on this type of prosecution (and in doing
so, not consider community supervision). 

 McGuire's counsel states he has been unable to find any cases on point, and the State has not
responded to this issue except by stating that any error is harmless. This type of argument, however,
is simply a new twist on an old tactic, which is most easily understood by reference to the
underlying, and long-standing, rules governing the type of argument that may be made by a
prosecutor as regards the type or amount of punishment advocated by the State.

 [The State may] argue that juries should deter specific crimes by their verdict. The
State may also argue the impact of the jury's verdict on the community. The State
may not, however, argue that the community or any particular segment of the
community expects or demands either a guilty verdict or a particular punishment.


Borjan v. State, 787 S.W.2d 53, 55-56 (Tex. Crim. App. 1990) (citations omitted). Reminding a
jury of the impact of their verdict on a community differs from telling a jury that the community
expects or demands a particular verdict or form of punishment. Id. at 56. The former is permissible,
while the latter is not. Id.; Harris v. State, 56 S.W.3d 52, 56 (Tex. App.--Houston [14th Dist.]
2001, pets. ref'd [2 pets.]).

 The types of sentences rendered by other juries in facially similar cases is simply not relevant
to the determination of punishment in this particular case; no two cases are precisely the same. 
Again, we can imagine no reason to allow such questioning to go forward without raising an
objection. However, once again, there is nothing in this record to indicate why trial counsel did not
object or whether he was following some valid trial tactic we cannot now imagine. Being bound by
previous rulings of the Texas Court of Criminal Appeals, we conclude that without such a foundation
in the record, we cannot conclude that error has been shown.

 McGuire next contends that counsel was ineffective in several other respects that he argues
collectively show the pattern of ineffective assistance of counsel that would justify reversal. He
points out that counsel failed to introduce evidence that he had never been convicted of a
felony--thus impacting his ability to obtain community supervision. He also points out, however,
that neither the trial judge nor the State realized this, but the option was nonetheless included in the
charge.

 McGuire also points out that counsel had not shown the recording of his statement made to
Warren, suggesting that not doing so was ineffective. He further complains about a sidebar comment
made by the State when ending his direct examination of a witness: "I'm going to pass you as a
witness and [McGuire's counsel] is going to ask you some questions and I know you'll be truthful
with him as you were with me, and I'll pass the witness." 

 The State's effort to skirt the rules was patently improper, but ultimately successful because
defense counsel neither objected to nor otherwise complained about his unwarranted commentary,
obviously directed toward bolstering the reputation of his witness. Such sidebar remarks are
improper, but as in this case, so quickly and unexpectedly presented that an objection preventing
them would be impossible. One trial tactic often employed by some competent trial practitioners
is to strictly limit the objections which they lodge, some believing that juries interpret multiple
objections by an attorney to be efforts to stonewall the jury or to unnecessarily delay a trial. Whether
that theory was followed by McGuire's trial counsel is something which can only be the subject of
speculation. However, choosing not to make an objection after the comment was made is clearly the
sort of decision that is tactical in nature; absent a showing that there was no tactical impetus in not
having objected, error has not been shown. 

 McGuire also complains because, during his examination of the witnesses, defense counsel
did not emphasize a number of issues, such as the discrepancies between the testimony of different
witnesses and the failure of the girl to testify to whom the victim had supposedly sent a text message
the night of the incident. Counsel did cross-examine the witnesses who testified and the decisions
made about the nature of such examination and arguments are typically tactical in nature. We may
not second-guess such decisions. 

 Finally, McGuire also argues that a conflict in interest existed, as defense counsel had
represented the complainant's father in 1999 or 2000 in his divorce. He points to comments by
defense counsel that were sympathetic to the father and suggests that they indicated a conflict of
interest, presumably that might impinge on counsel's ability to effectively represent a person accused
of raping the man's daughter. 

 That matter was never broached or discussed in any detail, and it is not apparent from the
record that any actual harm to McGuire resulted, although the appearance of impropriety is always
a concern when an attorney appears in a case in a position somehow opposed to his former client. 
In criminal cases, however, as the Texas Court of Criminal Appeals has taken quite a relaxed
position as to such conflicts where the same case is not involved, we cannot conclude that error has
been shown in that connection. See Landers v. State, 256 S.W.3d 295 (Tex. Crim. App. 2008). 

 Upon review of the entirety of the conduct, we do not find error, either separately or in
combination, that reaches the level of harm required by a Strickland analysis to justify reversal.

 We affirm the judgment of the trial court.




 Bailey C. Moseley

 Justice


Date Submitted: January 8, 2010

Date Decided: January 29, 2010

 

Do Not Publish 
1. If the record on direct appeal is inadequate, habeas corpus is the more appropriate avenue
for developing the record on this issue. Moore v. State, 227 S.W.3d 421, 426 n.1 (Tex.
App.--Texarkana 2007, pet. ref'd).



ss=MsoNormal style='text-align:justify;text-justify:inter-ideograph;
mso-pagination:widow-orphan'> 

                                     IN
RE:  NABORS WELL SERVICES, CO. AND

BUFFCO
PRODUCTION, INC.

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                        Memorandum
Opinion by Chief Justice Morriss

                                                                              

                                                                              








                                                     MEMORANDUM 
OPINION

 

            Victor Aviles, an employee of Nabors
Well Services Co. and Buffco Production, Inc. (collectively, Nabors), was electrocuted and killed while on the
job for Nabors.  His widow filed claims
of negligence and gross negligence, among others, for Aviles estate, herself,
and their minor children.  Nabors
produced an application for employment signed by Aviles acknowledging receipt
and understanding of Nabors dispute resolution program, which required
arbitration of all legal and equitable claims against Nabors.  After being hired, Aviles signed another
acknowledgment that his continued employment with the Company constitute[d]
[his] acceptance of the terms of this provision [to arbitrate] as a condition
of my employment or continued employment.[1]   

            The trial court denied Nabors first
and amended motion to compel arbitration of the death claims brought by Aviles
family.  By petition for writ of
mandamus, Nabors challenges that ruling. 
Key to our resolution of this petition for writ of mandamus is the question
of which Act applies to this dispute, the Federal Arbitration Act (FAA) or the
Texas Arbitration Act (TAA).  See 9 U.S.C.A. §§ 116 (West, Westlaw
2010); Tex. Civ. Prac. & Rem. Code
Ann. §§ 171.001.098 (Vernon 2005). 
Nabors claims that the FAA applies to this dispute.  Because the FAA does not apply to this
dispute and the TAA allows for interlocutory appeal[2] from
a denial of arbitration,[3]
we deny the petition for writ of mandamus.

            To be entitled to mandamus relief,
a petitioner must show that the trial court clearly abused its discretion and
that the relator has no adequate remedy by appeal.  In re
Gladewater Healthcare Ctr., 279 S.W.3d 850, 852 (Tex. App.Texarkana 2009,
orig. proceeding) (citing In re McAllen
Med. Ctr., Inc., 275 S.W.3d 458 (Tex. 2008) (orig. proceeding)).  Denial of a motion to compel arbitration
under the TAA is reviewable by interlocutory appeal such that mandamus will not
lie.  Tex.
Civ. Prac. & Rem. Code Ann. §§ 171.021, 171.098.  Therefore, if the TAA applies, we must deny
the petition for writ of mandamus.

            The record establishes that, because
Nabors engaged in interstate commerce as it is in the business of drilling for
oil and gas resources that are placed into commerce in both Texas and other
states of the United States, the FAA applies generally to Nabors.  See 9
U.S.C.A. § 1.  On the other hand,
the first section of the FAA makes clear nothing herein contained shall apply
to contracts of employment of seamen, railroad employees, or any other class of
workers engaged in foreign or interstate commerce.  9 U.S.C.A. § 1.  Aviles was a commercial driver for
Nabors.  The United States Supreme Court
has interpreted the phrase other class of workers engaged in foreign or
interstate commerce as exempting from the FAAs coverage any employment
contracts of transportation workers actually engaged in the movement of goods
in interstate commerce.  Circuit City Stores, Inc. v. Adams, 532
U.S. 105, 112 (2001).  Truck drivers,
such as Aviles, are considered transportation workers within the meaning of
this exemption provision.  In re Villanueva, No. 08-08-00329-CV,
2009 WL 1945577, at *3 (Tex. App.El Paso July 8, 2009, orig. proceeding) (citing Harden v. Roadway Package Sys., Inc.,
249 F.3d 1137, 1140 (9th Cir. 2001)); In
re Swift Transp. Co., No. 08-08-00348-CV, 2009 WL 1945578, at *3 (Tex.
App.El Paso July 8, 2009, orig. proceeding); In re Mission Petroleum Carriers, Inc., No. 13-04-00550-CV,
2005 WL 326848, at *2 (Tex. App.Corpus Christi Feb. 11, 2005, orig. proceeding)
(mem. op.); see also Lenz v. Yellow Transp.,
Inc., 431 F.3d 348, 351 (8th Cir. 2005); see generally Buckley v. Nabors Drilling USA, Inc., 190 F.Supp.2d
958 (S.D. Tex. 2002), affd, 51 Fed.
Appx. 928 (5th Cir. 2002).

            Nabors argued that Aviles was
employed as a roustabout or derrick hand, and not as a driver at the time of
the accident, such that he could not be considered as an other class of worker
under the FAA.[4]  A few days after Aviles signed his
acknowledgment of the dispute resolution program, however, he signed
documentation demonstrating that he was a motor carrier worker for Nabors.  No evidence, beyond counsels argument, was
presented to the trial court to contradict the contention that Aviles was a
transportation worker.  As a finder of
fact, the trial court was free to decide Aviles was a truck driver at the time
he signed the acknowledgments of the dispute resolution program.

            Mandamus issues only when there has
been no adequate remedy by appeal and the record establishes a clear abuse of
discretion or there is a violation of a duty imposed by law.  Cantu
v. Longoria, 878 S.W.2d 131 (Tex.
1994).  It was Nabors burden to provide
this Court with a sufficient record to establish the right to mandamus
relief.  Walker v. Packer, 827 S.W.2d 833, 83940 (Tex. 1992).  Because, based on this record, the trial
court could determine that Aviles was a transportation worker, such that the
FAA did not apply to his employment contract, we conclude it did not clearly
abuse its discretion in denying Nabors motion to compel arbitration.  

            We
deny the petition for writ of mandamus.

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          July
19, 2010

Date Decided:             July
20, 2010











[1]Nabors
admits that the arbitration agreement arose from an employment contract.   





[2]Nabors previously attempted to
appeal from the order in question here. 
We recently dismissed that appeal for want of jurisdiction for reason
that the attempted appeal was too late to give us jurisdiction.  See
Nabors Well Servs. Co. v. Aviles, No. 06-10-00018-CV, 2010 WL 2680087 (Tex.
App.Texarkana July 7, 2010, no pet. h.) (mem. op.).

 





[3]If the FAA applied to this
dispute, the analysis would get more complicated.  For orders entered before September 1, 2009, [a]
party denied the right to arbitrate under the Federal Arbitration Act by a
state court has no adequate remedy by appeal and is entitled to mandamus relief
to correct a clear abuse of discretion. 
In re L & L Kempwood Assocs.,
L.P., 9 S.W.3d 125, 128 (Tex. 1999) (orig. proceeding) (per curiam).  Nabors filed its first motion to compel
arbitration October 18, 2008.  On July
17, 2009, the trial court signed a judgment denying that motion to compel.  Recent statutory changes provide for
interlocutory appeal of denials to compel arbitration under the FAA as well as for
all orders entered on or after September 1, 2009.  Tex.
Civ. Prac. & Rem. Code Ann. § 51.016 (Vernon Supp. 2009).  In this case, an amended motion to compel
arbitration was filed November 20, 2009. 
On February 19, 2010, the trial court entered an order denying the
amended motion.  This order expressly
found that the Amended Motion to Compel is a Motion for Reconsideration of the
Courts prior Orders of July 17, 2010, did not grant or deny the amended
motion to compel, and instead found that its prior Orders of July 17, 20[09] [sic],
should not be withdrawn.  Therefore, we
will consider this petition for writ of mandamus to be from the earlier, July
17, 2009, order.  





[4]Closely related arguments have
been previously rejected.  Brown v. Nabors Offshore Corp., 339 F.3d
391 (5th Cir. 2003) (Section 1 of FAA excludes coverage of employee who was
seaman, even if not engaged in interstate commerce); Autin v. Nabors Offshore Corp., No. Civ. A. 02-3704, 2004 WL 432201
(E.D. La. Mar. 5, 2004) (seaman).  In Autin, Nabors claimed a change in
status:

 

Nabors
apparently concedes that plaintiff worked for Nabors on March 2, 2001 until
June 23, 2001 as a Jones Act seaman, when he was allegedly terminated.  The very next day, June 24, 2001, plaintiff
was allegedly rehired as a roustabout on a fixed platform.  Six weeks later, plaintiff suffered the injury
that is the subject of this suit.

 

Id. at *1.